## OVERMAN v. STATE.

1. PRACTICE IN SUPREME COURT: *Bill of exceptions.*

Where a bill of exceptions begins with the formula that " the State, to maintain the issue on its part," swore a certain-named witness, whose testimony, with that of others, follows, and then recites that the State closed, and that the defendant after calling five witnesses, whose testimony is given in full, also closed, it will be inferred that it contains all the evidence, though it does not expressly negative the introduction of other testimony.

2. MURDER: ACCESSORY: *Conviction not sustained by proof.*

The defendant was convicted as an accessory of A. in the murder of B. The evidence showed that the deceased was killed while sitting in his house, after night-fall, by a pistol-shot fired through a crack or hole in the wall; and there were circumstances in proof from which the jury might fairly conclude that the shot was fired by A. The evidence also showed that the defendant was boarding at B.'s, and that he and several others were in the room with B. when he was shot; that the defendant and another person immediately rushed out to discover the assassin, but could see no one; that they returned to the house and rendered to B. such service as he needed; that defendant appeared to be grieved at what had befallen B. and offered his horses to send for a physician ; that A. was living seven or eight miles from B., and there was no proof of any conspiracy between A. and the defendant, or that the defendant had any knowledge of the crime which was about to be committed, or that he was in anywise responsible for B.'s death. *Held*: That the judgment should be reversed for a total want of proof to sustain it.

Overman v. State.

APPEAL from *Washington* Circuit Court.

J. M. PITTMAN, Judge.

The appellant *pro se.*

The evidence wholly and utterly fails to sustain the verdict.

*D. W. Jones*, Attorney General, for the State.

The bill of exceptions does not state that it contains all the evidence adduced, and the presumption is, that the verdict is supported by the evidence. *Ark. Reports, passim.*

The evidence in this case is wholly circumstantial, but when it is abundant in circumstances it is superior to positive evidence. *Burke's Works, vol. 2, p. 624.*

SMITH, J. Overman was indicted and convicted as an accessory of Sam Jones in the murder of one Keltner, and was sentenced to be hanged. His motion for a new trial alleged, amongst other grounds, that the verdict was contrary to the evidence, and was not supported by sufficient evidence. The bill of exceptions does not expressly negative the introduction of any other testimony than that which it sets out. It begins with the formula that the State, to maintain the issue on its part, swore a certain-named witness, whose testimony follows, together with that of about twenty other witnesses. It then recites that the State closed, and the defendant, after calling five witnesses, whose testimony is given in full, closed. This is not as definite and certain as a bill of exceptions ought to be, when a reversal is sought for a failure of proof. Nevertheless, it is to be inferred that it contains all the evidence which was used at the trial. *Leggett v. Grimmett, 36 Ark., 496.*

Keltner was killed, while sitting in his house after nightfall, by a pistol-shot fired through a crack or hole in the wall.

Circumstances were in proof from which the jury might fairly conclude that this shot was fired by Sam Jones, the alleged principal in the felony, and that it was done with malice, premeditation and deliberation. Keltner and the defendant were partners in getting out cross-ties for a railroad. The defendant's wife had left him shortly before and had gone off to live in adultery with Jones, and the defendant was now boarding at Keltner's. At the time of the shooting there were present in the room, Keltner, his wife and two children, the defendant and one McNaught. The last two were seated on a trunk, in a corner of the room, which seemed to have been their usual seat in the evening. Keltner was sitting apart from the others. The defendant and McNaught immediately rushed out to discover the assassin, but could see no one. They returned to the house and rendered to Keltner such services as one who was mortally wounded needed. When some of the neighbors came in the defendant was weeping. When it was proposed to send for a physician he offered his horses. Nevertheless, suspicion fell upon him; he was arrested; and, being put upon his trial, was found guilty, without any evidence, direct or circumstantial, tending to connect him with the commission of the crime. Jones was living at the distance of seven or eight miles from Keltner; and there is no proof in the record of any conspiracy between Jones and the defendant, or that the defendant had any knowledge of what was about to befall Keltner, or that he was in anywise responsible, either as principal or accessory, for Keltner's death.

There are only some slight circumstances of suspicion, in his conduct after the shooting took place and after his arrest. But a man cannot be judicially hanged upon a bare suspicion.

The judgment is reversed for a total want of proof to sustain it, and cause remanded for further proceedings.