H. McCormick Lumber Company, Respondent, vs. Winans, Appellant.

*December 18, 1905—January 9, 1906.*

*Sales: Implied warranty of fitness: Acceptance: Waiver of defects.*

1. Upon a sale of chattels there was no implied warranty of fitness, although the vendor was the manufacturer and the vendee had stated the purpose for which the goods were bought, where the vendee did not trust to the skill, judgment, or experience of the vendor, but gave a written order specifically describing the goods wanted.
2. Where a purchaser of lumber accepted and used it without making objection to the quality thereof, or notifying the vendor that it would not be considered as satisfying the contract, until about eight months later, he thereby waived the defects, if any, and became answerable for the purchase price.

Appeal from a judgment of the county court of Waukesha county: M. S. Griswold, Judge. *Affirmed.*

The complaint alleges, in effect, that the plaintiff is a corporation doing business at McCormick, in the state of Washington; that the defendant is indebted to the plaintiff for goods, wares, and merchandise sold and delivered by the plaintiff to the defendant at his instance and request on and between April 3, 1902, and April 25, 1902, as set forth in Exhibit A, attached to and made a part thereof, in the sum of $1,829.07, with interest thereon from said last-mentioned date at six per cent., and that the same was unpaid though demanded. The answer consists of admissions, denials, and counter allegations, and, among other things, admits that the defendant contracted for and received three carloads of lumber from the plaintiff, of the sizes and dimensions set forth in said Exhibit A, at the times specified in that exhibit; that, if said lumber had been of the quality so contracted for, the value would have been the same as alleged in the complaint, less the freight on the same paid by the defendant, amounting

to $842.40, leaving the difference of $986.67, which the defendant agreed to pay and was indebted to the plaintiff; that the lumber so contracted for was to be "No. 1 common," and to be used, as the plaintiff well knew, in the construction of three river barges about to be constructed by the defendant.

The answer then alleges by way of counterclaim, in effect, that said lumber was to be "No. 1 common," to be used in the construction of such barges, but proved to be of an inferior quality, and the defendant being in a hurry used the same in constructing such three river barges, to his damage in the sum of $1,200, and demands judgment for the difference of $213.33. The plaintiff replied to the counterclaim by way of a general denial, except that the reply admitted that the defendant had paid the freight on the lumber, amounting to $842.40, as alleged in the answer, and that the defendant was entitled to have that amount deducted from the amount claimed in the complaint, leaving the true amount due to the plaintiff $986.67, with interest thereon at six per cent. from April 25, 1902.

It is undisputed that March 10, 1902, the defendant wrote from Waukesha, Wisconsin, to the plaintiff at McCormick, in the state of Washington, to the effect that he wanted lumber for five flatboats, each a duplicate of the memorandum inclosed therein, and asked for best figures, to be on lumber f. o. b. St. Paul, and when shipment could be made to St. Paul. In answer to that letter the plaintiff on March 18, 1902, wrote to the defendant, giving sizes and dimensions and prices. To that letter the defendant wrote and sent to the plaintiff at McCormick, in the state of Washington, Exhibit A mentioned in the complaint and also in the answer, which, omitting immaterial parts, is as follows:

"Yours of March 18th received. Your prices are somewhat higher than I expected, but will try enough for three flatboats at this time, and if material is satisfactory will want four more later. Please duplicate the order or memorandum

I sent three times, which will give carload of long material and three carloads of the short. . . . Please get them to me as quickly as you can and notify me at once when you can ship, so that I may have men ready to go at them as soon as they arrive."

At the close of the testimony the jury, by direction of the court, returned a verdict for the amount mentioned in the plaintiff's reply, the same being $1,154.31. From the judgment entered upon that verdict for the amount stated, with costs, the defendant appeals.

For the appellant there were briefs by *Ryan, Merton & Newbury*, and oral argument by *M. A. Jacobson*.

For the respondent there was a brief by *Holt & Coombs*, and oral argument by *A. N. Coombs*.

CASSODAY, C. J. As indicated in the foregoing statement, the answer admits that the defendant received from the plaintiff the three carloads of lumber that he had contracted for of the sizes and dimensions set forth in Exhibit A, annexed to and made a part of the plaintiff's complaint, at the times specified in that exhibit. It is also therein admitted that the lumber would have been of the value alleged in the complaint if it had been of the quality contracted for. The only objection made in the answer to the payment of the plaintiff's claim is that the lumber was to be of a quality known as "No. 1 common," to be used by the defendant in the construction of three river barges, and that when the defendant unloaded the lumber from the cars it proved to be of an inferior quality, but that, nevertheless, the defendant used the same in the construction of such barges. There was no mention in the correspondence, constituting such written agreement, of "No. 1 common," nor of any other particular quality of lumber, except such as may be inferred from the language of Exhibit A. According to the testimony of the defendant, his real business was that of a steamboat man and contractor, moving lumber and logs and products up and down the Mississippi river, and

·at times he had acted as pilot and constructed barges used on the river; that flatboats and barges were one and the same thing on the river; that the lumber mentioned in the correspondence was "Douglas fir;" that such lumber was "not to be had in the market at St. Paul or along the Mississippi river, only as it comes from Washington;" that the under-·standing was "that the lumber was to be No. 1 common;" that he was not at St. Paul when the lumber arrived there; that he was down the river at the time, but was notified of its arrival; that it was about two weeks after its arrival before he ·saw it; that he saw it the same day or the next day after it was unloaded; that he found the lumber very deficient for the purpose for which it was ordered; that he so stated to one ·J. C. Bennett, who was named in the plaintiff's letter-head as "Selling Agent, St. Paul;" that they looked at the lumber, and that Bennett advised him to write to the plaintiff and make his complaint; that he did write to the plaintiff soon after, but received no answer.

The defendant was allowed, against objection and without any demand therefor being made, to state the contents of such letter, which in some respects was contrary to admissions in ·the answer. The plaintiff's secretary testified to the effect that the plaintiff had no agent under contract at St. Paul; that Mr. Bennett, mentioned in the defendant's testimony, ·merely received inquiries for lumber and referred them to the plaintiff for prices, except in some instances he was able to ·make prices himself; that the plaintiff did not manufacture any lumber or timber for any specific purpose, but simply sawed lumber and timber of such dimensions as might be or-·dered; that the plaintiff never had anything to do with the building of flatboats, and did not know anything about what the lumber in question was to be used for except as stated in the correspondence; that as a matter of fact the plaintiff shipped No. 1 common lumber to the defendant, and all that ·was so shipped was graded No. 1 common; that the first inti-

mation the plaintiff had that there was anything wrong with such shipment was a letter from the defendant dated December 26, 1902, eight months after such shipment, in which, among other things, he said:

"I have delayed writing you, hoping to be able to send you the amount of your account, but have been, and am now, unable to do so. . . . When I discovered the quality of material you sent, I called on your selling agent at St. Paul and had him examine the lot, and, while I have not seen him since, I think he will say pretty nearly what I have. . . . In conclusion I will say that I am entirely solvent, but cannot pay your claim without pledging property to borrow money, which, under the circumstances, I do not think I ought to do. Carry this account until I can get my boats at work next season, and I will pay you in full and pocket the loss that may result. If you refuse you can undoubtedly collect, but the delay would be equally great and I would be driven to the wall."

There was no reference in that letter to any complaining letter having been previously written by the defendant. Mr. Bennett, referred to, testified that there was no contract whatever between him and the plaintiff, and that he had nothing to do with the selling of this lumber to the defendant.

Such testimony of the plaintiff's secretary is undisputed. The defendant, having admitted in his answer that he received from the plaintiff the three different carloads of lumber he contracted for, at the times and of the sizes and dimensions set forth in his order for the same, was in no position on the trial to prove or contend that the plaintiff had not complied with the order in the particulars mentioned. Counsel contend that there was an implied warranty in the order that the lumber should be merchantable and reasonably fit and appropriate for the purpose of constructing three flatboats or barges. The rule is undoubtedly as stated in the authorities cited by counsel that:

"Where the buyer, disclosing the purpose to be accomplished, orders an article to supply that purpose from a man-

ufacturer or dealer in such articles, trusting to the latter's skill, judgment, or experience to determine what the article shall be, the seller, by accepting the order, impliedly agrees that the article which he supplies shall in fact be reasonably fit and appropriate to the purpose so disclosed." 2 Mechem, Sales, § 1344; *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 672, 65 N. W. 513.

But the evidence here is undisputed that the defendant was a man of great experience in the building of flatboats or barges and knew just what he .wanted and did not trust to the .skill, judgment, or experience of the manufacturer, but gave his written order specifically describing the lumber which he wanted and for which he contracted. As stated by the same author in another section:

"There will be no warranty of fitness implied, although the use be known and the seller is the manufacturer, where the buyer has expressly specified the quality, dimensions, or characteristics which the article to be supplied shall possess, the materials of which it is to be made, or the method by which it is to be produced. The buyer here evidently relies upon his own knowledge or judgment and not upon the judgment, knowledge, or experience of the seller." 2 Mechem, Sales, § 1350.

True, the defendant did not have an opportunity to inspect the lumber until it reached St. Paul and was there unloaded. But if, upon its being unloaded, the defendant accepted the lumber without objecting to the same within a reasonable time thereafter or notifying the plaintiff that the lumber would not be considered as in satisfaction of the contract, then he thereby waived the defects, if any, and became answerable for the purchase price. *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785. The same is true if the contract was understood by both parties to be for what is known as "No. 1 common," as it seems to have been, although the contract did not in express terms mention such quality. In this case the evidence is undisputed that the first intimation the plaintiff received that the defendant was dissatisfied with any

of the lumber was contained in his letter of December 26, 1902, written eight months after the shipment.   So it is undisputed that the witness Bennett, with whom the defendant conferred at St. Paul soon after the lumber was unloaded, had no contract relation with the plaintiff and no authority to act for the plaintiff in respect to the lumber in question.   We must hold that there was no error in directing a verdict in favor of the plaintiff.

*By the Court.*—The judgment of the county court of Waukesha county is affirmed.