LOGEMAN BROTHERS COMPANY, Respondent, vs. R. J. PREUSS COMPANY, Appellant.

*February 21—March 19, 1907.*

*Sales: Implied warranty: Attachment to be connected to machine: Special verdict: Instructions to jury: Burden of proof: Setting aside verdict: Misconduct of jury: Evidence: Leading questions: Immaterial error.*

1. There is no implied warranty of the practicability of connecting an addition or new attachment to a machine not manufactured or delivered by the maker of the attachment, where such practicability is a matter as apparent to the vendee as to said maker.
2. There is no implied warranty that the addition or attachment will answer the known purpose for which it was designed, where the capacity to do the work intended must be the joint capacity of the new device and the old machine.
3. There is no implied warranty that a machine or attachment will do the work for which it is intended, where it is made according to a model furnished for that purpose by the vendee.

4. A question for special verdict, "Did the plaintiff agree to manufacture and attach to defendant's punching press certain attachments which would enable the defendant, with the use of such press when equipped with such attachments, to perform the work required by the defendant?" is *held* to cover the controverted facts claimed to constitute an express warranty, so that a negative answer thereto negatived the existence of any such warranty.

5. An instruction to the jury that as to such question the burden of proof was upon the defendant was not misleading, the jury knowing the positions taken by the respective parties with reference to that question.

6. Instructions to the effect that burden of proof means the duty of proving a fact by the preponderance of evidence; that preponderance of evidence means the greater convincing power of evidence; that that side has furnished the preponderance of evidence which has produced evidence of greater convincing power in the minds of the jury than that produced by the other side; that the party upon whom rests the burden of proof does not lift that burden by merely producing a preponderance of the evidence; that the evidence produced by him, though of slightly greater convincing power than that of his opponent, may still be weak and leave the mind in doubt; and that in order to entitle a party to a finding in his favor his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention,—are *held* not erroneous as being self-contradictory, illogical, or misleading.

7. A verdict in a civil action should not be set aside because of improper conduct of jurors not occasioned by the prevailing party or any one in his behalf, where the court cannot see that it had or might have had an effect unfavorable to the losing party. So *held* as to a quarrel leading to blows between two jurors in the jury room, it not appearing that such quarrel had any tendency to coerce any juror to agree to the verdict.

8. A question asked by plaintiff's counsel of a witness for plaintiff: "Counsel [for defendant] has asked one or two questions . . . in which it was assumed that plaintiff undertook to manufacture those attachments and fit them to the machine so that the machine would perform, or be able to perform, the work in question. Was there such an undertaking on the part of the plaintiff?" is *held* objectionable as leading and calling for a conclusion; but as the subject of the question had been already gone over by both parties in detail and the question came as a final summing up on rebuttal, the error in allowing it is *held* not to have been prejudicial.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The judgment appealed from was for $180 in favor of the plaintiff in an action on contract. The complaint sought recovery for work, labor, and materials, of the reasonable value and for the agreed price of $180, performed and furnished by respondent at request of the appellant. After a general denial the answer averred the making of a contract whereby the respondent undertook and agreed to construct and erect in working order a press for the use of the appellant, and guaranteed that the same would perform the work required by the appellant, and that the respondent was aware of the purpose for which the machine was to be used, but failed to so construct the machine that the latter was sufficient to perform the work required by the appellant. The evidence, however, established that the appellant had possession of an old press upon which it desired some punching and riveting attachments for the purpose of punching and riveting iron, that it furnished the respondent a sample or model of the riveting device to be attached, did not furnish any model of the punching device, and the whole order was given at once by one entire contract. The respondent was a manufacturer of machinery and knew the purpose for which the appellant required the attachments. Of the $180 compensation, the work and material on the riveting device would represent about $120 and on the punching device about $60. The devices were constructed and attached by the respondent. The punching device failed to work, not on account of any fault in the construction or material of the device itself, but by reason of the difficulty or impracticability of connecting it to and using it upon the old press. The strips of iron to be punched were of such length and such number of holes were required to be made by a single operation of the machine that the attachments for punching could not be placed so that the punching stroke was in a direct line with the application of the power.

Consequently the steel punches did not meet the dies squarely
and broke in operation. So far the testimony is undisputed.
There was, however, a considerable conflict of evidence with
reference to whether or not the respondent, after having ex-
amined the press preparatory to making and connecting the
attachments for riveting and punching, had represented that
the press with those attachments could be used for appellant's
purposes; that is to say, would do the work of punching and
riveting as required by the appellant.

A special verdict was submitted to the jury and returned
by them as follows:

"Did the plaintiff agree to manufacture and attach to de-
fendant's punching press certain attachments which would
enable the defendant with the use of such press when equipped
by such attachments to perform the work required by the de-
fendant? *A.* No."

No additional or different question was requested by ap-
pellant to be submitted to the jury. During the deliberations
of the jury a quarrel arose in the jury room between two of
the jurors, blows were struck, and after the jury had returned
the above verdict the matter was brought to the attention of
the court and one of the jurymen engaged in the quarrel was
fined $10 and the other $20 for contempt of court.

*Edgar L. Wood,* attorney, and *A. C. Umbreit,* of counsel,
for the appellant.

For the respondent there was a brief by *Kleist & Bender,*
and oral argument by *W. H. Bender.*

TIMLIN, J. The appellant assigns as error that the verdict
submitted fails to cover all the issues in the case which were
for the jury. For the purpose of determining what questions
should be submitted to a jury in cases where a special verdict
is called for, we first consider the issues made by the plead-
ings, then how many or which of these issues have been elim-
inated by admissions on the trial, by uncontradicted evidence

concerning such issues, or by failure of proof on the part of that party upon whom the burden of proof rests. Without descending into the details of evidence, we then select issues of fact which remain for the jury. These will constitute the special verdict.

The single question submitted to the jury in the instant case covers all material controverted questions of fact which remained when the evidence for both parties closed. It did not use the words "express warranty," but it covers the controverted facts which were claimed by the defendant to constitute an express warranty in this case, and it is the better for this quality. As answered it is sufficient under the evidence in this case to which it applies to negative the existence of any express warranty. But the defendant contends that, notwithstanding this negation of express warranty, there was an implied warranty that the manufactured article was reasonably fit for the purposes for which it was known by the manufacturer thereof to have been intended, and that this legal conclusion follows from these facts, viz.: The defendant, a manufacturing corporation, desired a machine for punching and riveting steel strips about fifty-four inches in length, and for reasons of economy attempted to fit out an old press which it had with attachments for punching and riveting, and employed the plaintiff, a manufacturer, to do this work for $180. Before closing the contract the plaintiff was shown the old press so to be fitted up. It was apparent from the length of the steel strips to be punched, the number of holes to be made at one stroke, and the width of the old press that the punching attachments could not be so placed on the old press in connection with the riveting apparatus to be attached thereto that the punching stroke would be in a direct line with the application of the power which moved the stroke. A plan or model for the construction of the riveting device was furnished by the defendant to the plaintiff, but no plan or model for the construction of the punching attachment was fur-

nished. The riveting device constituted the principal part of the cost of manufacturing and attaching these two devices to the old press. The plaintiff in due time manufactured and attached to the old press both devices, but the punching device failed to work properly, not on account of any defects or imperfections of workmanship or material in the device itself, but because of the difficulty or impossibility of so connecting it with the old press that the punching stroke was in a direct line with the power applied to produce that stroke. Under such circumstances is there any warranty implied by law? Both parties rely on *Fisk v. Tank,* 12 Wis. 276, where it is said:

"In executory contracts for a specific purpose, especially by manufacturers, there is an implied warranty that the article delivered shall answer the purpose for which it was designed."

But the court held in that case that the defendants were entitled to prove, if they could, that it was the weakness of the boat or the negligence or the want of skill of the plaintiff or his agents, and not the defendants' defective or unskilful workmanship, which caused the unsuccessful operation of the machinery. In *McQuaid v. Ross,* 85 Wis. 492, speaking of the doctrine of implied warranty in general, it is said "to be founded on an actual or presumed knowledge by the vendor, as manufacturer, grower, or producer, of the qualities and fitness of the thing sold for the purpose for which it was intended." In *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513, it is said:

"It is undoubtedly the rule, as contended for by defendant, that where manufactured articles are sold for a particular purpose, and the purchaser does not have an opportunity for inspection, but trusts to the judgment of the seller, there is an implied contract that such articles will come within the description of those contracted for, and be merchantable for the particular purpose intended. *Merriam v. Field,* 24 Wis. 640; Benj. Sales, § 657."

If the machine is manufactured under a contract according. to a model furnished by the vendee, there is no implied warranty that it will do the work. *J. Thompson Mfg. Co. v. Gunderson,* 106 Wis. 449, 82 N. W. 299. When the article ordered is to be of a particular design or pattern well defined and understood between the parties, and the article made and delivered in pursuance of the contract conforms to the pattern or model, there is no warranty implied further than it should be of good workmanship and material. *Cosgrove v. Bennett,.* 32 Minn. 371, 20 N. W. 359, as cited in *J. Thompson Mfg. Co. v. Gunderson, supra.* So, if a manufacturer or dealer contracts to sell a known or described thing, although he may know the purchaser intends it for a specific use, if he delivers the thing sold there is no implied warranty that it will answer or is suitable for the specific use to which the purchaser intends applying it. Id., citing *Gachet v. Warren,* 72 Ala. 288. To the same effect: *Milwaukee B. Co. v. Duncan,* 87 Wis. 120, 58 N. W. 232; *H. McCormick L. Co. v. Winans,* 126 Wis. 649, 105 N. W. 945; *La Crosse P. Co. v. Helgeson,* 127 Wis. 622, 106 N. W. 1094. In *Carleton v. Jenks,* 80 Fed. 937, 26 C. C. A. 265, the contract required a new boiler to be made and placed in a vessel. The place in the vessel in which the boiler should be placed and the opportunities and advantages for fastening the boiler therein were known to both parties, or at least as plainly observable to the one as to the other. The manufacturers of the boiler represented that the fastening of the boiler in the vessel would be sufficient. The court said on the question as to whether or not the purchaser was entitled to rely upon this as a material representation:

"We are unable, however, to find much force in this suggestion. It might have significance if the question related to the construction of the boiler itself, and applied to inherent defects, or those which were not as readily observable to the other party as to the manufacturers; but the matter of the fastenings to the boat was open and as much exposed to the inspection and judgment of the appellants as to the manu-

facturers, and the requirements would seem to be as much within the knowledge of the manager, the captain of the boat, and more especially the chief engineer, who had immediate charge of the machinery, as to any one."

After holding that the alleged misrepresentation was a mere expression of opinion upon, or confidence in, the mode or sufficiency of the fastenings, and not intended or understood to be in the nature of a contract, the court passes to the question of implied warranty, and disposes of that as follows:

"We have, as already stated, found that here there was no express warranty, and there can be no implied warranty, that the work and materials furnished were suitable and adapted to the purpose, in respect to the defect which it is claimed existed here, where it was open, and as plainly observable to the vendee as it was to any one. *Jones v. Just,* L. R. 3 Q. B. 197; *Kellogg B. Co. v. Hamilton,* 110 U. S. 108, 3 Sup. Ct. 537; *Dushane v. Benedict,* 120 U. S. 630, 636, 7 Sup. Ct. 696."

See, also, *Davis Calyx D. Co. v. Mallory,* 137 Fed. 332, 69 C. C. A. 662.

In the instant case the press upon which the attachments were to be made belonged to the purchaser, who was also a manufacturer. The purchaser must be presumed to have known the length of the iron strips which he required to have punched and the width and all dimensions of the press. The contract required two attachments, one for riveting and one for punching, to be put on this same press. The vendee furnished the manufacturer a model for the construction of the riveting attachment. The jury having negatived the claim of express warranty made by the purchaser, if we assume for argument's sake that the purchaser, being defendant, can then fall back on an implied warranty which he has not pleaded, we discover, first, that his motion *non obstante veredicto* was properly denied, because the implied warranty in any event would not cover the greater part of the contract, which related to the riveting device which was built according to the pur-

chaser's model; second, that the implied warranty would not cover the practicability of connecting the manufactured attachments to the defendant's old press, because that was a matter as apparent to the purchaser as it was to the manufacturer, and, there being no defect in the workmanship or material of the devices themselves either for punching or riveting, the fault lying altogether in their annexation to the old press, there could be no implied warranty in any event. An implied warranty does not arise merely because the seller or manufacturer is personally wiser, more learned, or more experienced than the purchaser. It is entirely impersonal. It assumes in the case of a manufactured article coming within the rule of implied warranty that the manufacturer has made it and sold it to do the work for which it was intended, in legal effect contracting that it shall do such work. This excludes all known experimental devices, all additions or annexations to another machine not manufactured or delivered by the seller where the capacity to do the work intended must be the joint capacity of the new device and the old machine. We accordingly find that there was no implied warranty shown in the case at bar.

It is argued that the court erred in charging the jury that, as to the question submitted, the burden of proof was upon the defendant. The question was interrogative in form: "Did the plaintiff agree," etc. ? The court said: "The burden of proof as to this question is upon the defendant." The jury had already heard the version of the plaintiff and that of defendant. The instructions of a court to a jury must be construed with reference to the subject matter under discussion, like all other spoken or written language. The jury knew the position that defendant took upon that matter and with reference to that question. The jury also knew the position plaintiff took upon that matter and with reference to that question. The charge of the court in this particular was therefore clear to a jury of ordinary intelligence.

Criticism is made because in the instructions to the jury "burden of proof" is defined to mean the duty of proving a fact by the preponderance of evidence. "Preponderance of evidence" is then defined to mean the greater convincing power of evidence; but the definition does not stop there. It is further illustrated by saying that in the trial of a lawsuit that side has furnished the preponderance of evidence which has produced evidence of greater convincing power in the minds of the jury than that produced by the other side. These observations to the jury seem to be preliminary to the statement which follows, in these words:

"The party upon whom rests the burden of proof does not lift that burden by merely producing a preponderance of the evidence. He may produce a preponderance—that is, he may produce evidence of slightly greater convincing power to that given or produced by his opponent,—but still his evidence may be weak and leave the mind in doubt. In order to entitle a party to a finding in his favor, his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention."

To the appellant this instruction seems "self-contradictory, illogical, misleading, and therefore erroneous." These undesirable qualities are found by appellant because the jury

"were told that the burden as to this question was upon the defendant, and that such burden meant the proving of whatever fact the question submitted for determination, by the preponderance of the evidence, and that a preponderance of the evidence meant the greater convincing power. Yet in that immediate connection they were told that a party might meet this burden of proof by producing evidence of a greater convincing power than that produced by his opponent and yet not lift this burden, because, although the evidence was convincing, nevertheless it might be weak and leave the mind in doubt. We cannot conceive how convincing evidence or evidence of convincing power could be weak and leave the mind in doubt."

See, however, *Anderson v. Chicago B. Co.* 127 Wis. 273, 280, 106 N. W. 1077. If there is any conflict between the views of appellant's counsel and those expressed in the case last cited, manifestly the latter should govern.

The matter of the misconduct of the jury seems to have been handled by the learned circuit judge with skill and propriety. After the jury had returned their verdict in this case, the quarrel in the jury room was made a subject of investigation by the court before the discharge of the jury, and two of the jurors were found guilty of contempt of court for striking one another in the jury room during the deliberations on their verdict in this case, but thereafter all the jurors agreed to this verdict, and there was no claim made by the jurymen that the agreement of either was the result of coercion. Counsel now argue that because the disagreement which gave rise to the offensive language, which in turn caused the blows, arose in the discussion of this case, the blows and violence necessarily affected the verdict by coercing one or the other of the parties engaged. But this overlooks the fact that no such claim was made by either of the jurymen, no dissent from the verdict expressed, and that the human frailty of anger may, and often does, arise from slight and unimportant causes on account of some side remark having little or no bearing upon the subject under discussion, or from some personal or offensive allusion. The mere fact that there was a quarrel in the jury room and that the quarrel reached that degree of violence which brought the parties to blows, while undoubtedly misconduct, is not necessarily misconduct affecting the verdict. The circuit judge, after he had punished the recalcitrant jurors, denied a motion to set aside this verdict and for a new trial based on this ground. His opportunities for determining whether or not the quarrel affected the verdict were most excellent. We cannot say that he erred in this decision, or that the transactions in the jury room naturally tended to coerce or threaten any member of the

jury into agreement with any other or all other members. *Brown v. State,* 127 Wis. 193, 106 N. W. 536, presents a different question. In the instant case there is a lack of connection between the quarrel and its effects and the matter of coercing the jurors into an agreement on the verdict. The rule sustained by the weight of authority and the better reason seems to be that laid down in *Jackson v. Smith,* 21 Wis. 26, to the effect "that in civil cases, if such improper conduct does not appear to have been occasioned by the prevailing party or any one in his behalf, and the court cannot see that it had or might have an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside." See, also, *Carter v. Ford P. G. Co.* 85 Ind. 180; *Koehler v. Cleary,* 23 Minn. 325; *Clark v. Lebanon,* 63 Me. 393; *Crane v. Sayre,* 6 N. J. Law, 110.

After the plaintiff had produced its evidence in chief and rested, and the defendant had produced evidence in support of the affirmative defenses in its answer and rested, and after the plaintiff had produced its evidence in rebuttal of the last-mentioned affirmative defenses, and the last witness for the plaintiff had been cross-examined, upon redirect examination of such witness by counsel for the plaintiff the following question was asked:

"Counsel [referring to counsel for defendant] has asked one or two questions here, Mr. Logeman, in which it was assumed that the plaintiff undertook to manufacture these attachments and fit them to the machine so that the machine would perform, or be able to perform, the work in question. Was there such an undertaking on the part of the plaintiff?"

This was objected to as leading and calling for a conclusion, and the objection was overruled and proper exception taken, and the witness answered, "It was not." We cannot approve of this ruling, and, were it not that the subject of the question had been already gone over by both parties in detail and this, was a final summing up on rebuttal, the judgment would have

to be reversed—not that this form of question is proper in re-examination or rebuttal, but coming at that stage of the trial, and being but a summary of matters theretofore testified to in detail, the court is not convinced that the ruling was preju-dicial to the appellant.

*By the Court.*—The judgment of the circuit court is af-firmed.