## WARDEN *v.* MIDDLETON.

### Opinion delivered November 17, 1913.

1. APPEAL—BRINGING UP EVIDENCE—BILL OF EXCEPTIONS.—Although it does not so state, it is sufficient if a bill of exceptions shows inferentially, and by natural implication from the language used, that it contains all the evidence heard in the cause. (Page 219.)

2. SALE OF CHATTEL—WARRANTY—BREACH.—Where appellant purchased property from appellee, relying upon statements made by appellee relative thereto, if said statements were false, and induced the purchase, appellant is not liable in an action for the purchase price. (Page 220.)

3. SALE OF CHATTELS—BREACH OF WARRANTY—REMEDY OF PURCHASER.— In the sale of a chattel, where a false warranty contains the elements of fraud and deceit, the purchaser may, at his option, affirm the contract, and sue upon the breach of the warranty, or repudiate it, offer a return of the property purchased, and sue for damages. (Page 221.)

4. HUSBAND AND WIFE—COVERTURE AS DEFENSE—NOTE OF WIFE—BURDEN OF PROOF.—In an action against a married woman on a promissory

note, the burden is upon the plaintiff to show that the note was one she had power to make. (Page 221.)

Appeal from Carroll Circuit Court, Eastern District; *J. S. Maples,* Judge; affirmed in part; reversed in part.

STATEMENT BY THE COURT.

Appellees sued appellants on a promissory note alleged to have been given them for the purchase price of a jack. Appellants' answer admitted the execution of the note, and that it was given for the purchase price of the jack. They allege that they were induced to purchase the jack from appellees by reason of false and fraudulent representations of the appellee, J. V. Middleton, that he would warrant that the jack would get only black and bay colts. Appellants also allege that appellant, Inez Warden, was a *feme covert* at the time she signed the note, and is not liable on said note. Appellant, Hal Warden, testified:

My wife, Inez Warden, and I both signed the note sued on, which was given for the purchase price of a jack which I bought from appellees. My wife was not interested in the purchase of the jack, and only signed the note for my accommodation. I bought the jack in the latter part of February, 1911, from appellee, J. V. Middleton, at his house. I told Mr. Middleton that if he would warrant and guarantee the jack to get, or sire, only black or bay colts, I would give him the sum of $350, provided he would take my note for said sum due seventeen months after date. Mr. Middleton replied that he would warrant or guarantee that the jack would get, or sire, only black and bay colts. Upon such representations and warranties, I agreed to purchase the jack, and executed my note to appellees for the agreed sum, due seventeen months after date. He asked my wife to sign the note with me, and I also asked her to sign it as a favor to me. She was not interested in the purchase of the jack. The reason I wanted the note payable seventeen months after date was that I knew that by the time the note became due, the colts sired by the jack would prove whether they

would be black or bay colts. The jack was blue in color, and practically all the colts sired by him during the season of 1911 took after the jack in color, and none of them were blacks or bays. I then told Mr. Middleton about the jack not coming up to the warranty, and told him that I would not pay for it. The jack is of no value to me, and I would not have agreed to pay any price for him if I had known that his colts would take his color. The jack is worthless to me, and I offered to return him to appellees. I published a notice in a newspaper in the county, warning all persons not to purchase my note, as it is without consideration to me.

Other testimony was introduced by appellants tending to corroborate the testimony of appellant Warden as to the guaranty or warranty by appellee that the jack would only sire black or bay colts.

J. V. Middleton, one of the appellees, testified: Appellant Hal Warden saw the jack and examined him before he purchased him. He knew that the jack was blue, with a black stripe down his back. I did not represent to appellant Hal Warden that the jack would only sire black or bay colts, and did not give him a warranty to that effect. The jack had sired colts of other colors, and Hal Warden had seen some of these colts and knew that they were not black or bay.

The jury returned a verdict for appellees for the amount sued for, and the case is here on appeal.

*J. P. Fancher* and *Wade H. James,* for appellant.

Instructions numbered 5, quoted in the opinion, and 6, given by the court on its own motion, were based upon the erroneous view held by the court that the case was one sounding in tort instead of growing out of contract— failed to distinguish between an action based upon an express warranty and one grounded upon false representation; and in refusing to instruct the jury as requested on the question of express warranty the court committed reversible error. For distinction between representation and warranty, see 53 Cyc. 368.

The allegation of express warranty was a legal defense, and appellants were entitled to instructions covering their theory of the case.

Where there is an allegation in the answer and proof to support it, the court has no right to disregard the issue and *sub silentio* charge the jury that such contention is not of sufficient moment to merit the consideration of the jury. Art. 7, § 23, Const.; 117 S. W. 570; 37 Ark. 164; *Id.* 239.

The giving of the instructions by the court based upon fraud and misrepresentation did not cure the omission to instruct upon the question of express warranty. 76 Ark. 333; 70 Ark. 319.

The court erred in refusing to direct a verdict for Inez Warden. The allegation of the answer that she was a married woman at the time she signed the note and not legally bound is supported by uncontradicted evidence, and by the further proof that she was not interested in the purchase of the jack, that it was not for her benefit or for the benefit of her separate estate. 48 Ark. 220; 29 Ark. 346; 70 Ark. 5; 66 Ark. 437.

*Festus O. Butt,* for appellees.

1. The judgment should be affirmed, because the bill of exceptions affirmatively shows that it does not contain all of the evidence and all of the instructions in the case. 147 S. W. (Ark.) 445; 121 S. W. 736; 82 Fed. 773; 116 Ala. 629; 82 Ill. 309; 66 Minn. 179; 79 Fed. 291; 33 Ore. 172; 67 Kan. 862; 8 Okla. 169; 4 Ind. 266; 21 Ind. 249; *Id.* 273; 93 Ark. 426; 150 S. W. (Ark.) 391; 106 S. W. (Ark.) 939; 104 S. W. (Ark.) 156.

2. This court has long since settled the rights of a purchaser under an express warranty, such as is claimed in this case, and declared that he may (a) affirm the contract, keep the property and sue on the contract of warranty; or (b) affirm the contract, keep the property, and, when sued for the purchase money, set up the false warranty by way of recoupment in tort; or (c) rescind the contract, resist the recovery of purchase money and recoup on the warranty in tort. 22 Ark.

254; 30 Ark. 362; 53 Ark. 159. Clearly, in this case, under the allegations of the answer, defendants were seeking a recoupment and not basing their claim upon the contract of warranty. Warden's recovery, therefore, must rest upon tort. 34 Cyc. 657. Instructions given by the court were therefore correct, and it properly refused to give instructions asked by appellants which were based upon the theory that appellants were seeking to recover upon an express contract of warranty.

The requested instructions were also erroneous in assuming that an express warrant is absolutely enforceable regardless of whether it contravenes nature's law, or is ridiculous or impossible and known to the buyer to be so. 35 Cyc. 376; 11 Ark. 139; 23 Ark. 730; 137 Mo. App. 679; 74 Ark. 46.

Finally, they err in directing a recovery by the appellant without a tender of the property back or any actual rescission of the sale. 103 Mo. App. 135; 142 S. W. 495.

*J. P. Fancher* and *Wade H. James,* for appellants in reply.

A bill of exceptions is sufficient if it appears inferentially that all the evidence is brought up. 35 Ark. 450; 36 Ark. 496; 49 Ark. 364. See also 67 Ark. 223.

HART, J., (after stating the facts). It is first contended by counsel for appellees that the judgment should be affirmed because the bill of exceptions does not affirmatively show that it contains all of the evidence. The bill of exceptions recites the following: "The plaintiffs to sustain their cause, introduced the following evidence: (Then follows the testimony of plaintiffs' witnesses.)" It then recites: "The plaintiffs here close their case, and the defendants, to sustain the issue on their part, introduced the following evidence;" and, after setting out the testimony of the witnesses for the defendant, the bill of exceptions contains this statement: "The defendants here announced that they had closed their evidence in this case; whereupon plaintiffs introduced the following witnesses in rebuttal." Then follows the tes-

timony of two witnesses for the plaintiffs. The bill of exceptions then recites: ''The plaintiffs have announced that they had closed their evidence in this cause, and the court gave the following instructions, numbered from 1 to 7.'' The bill of exceptions then recites that the defendants offered the following instructions which were refused by the court. The refused instructions are then set out. Thus, it will be seen the bill of exceptions sets out the evidence that was introduced by the parties, and follows this by the instructions given and refused. We are of the opinion that it shows inferentially and by natural implication from the language used, that it contains all the evidence; and this is sufficient. *Mitchell* v. *Young,* 80 Ark. 441; *Overman* v. *State,* 49 Ark. 364; *Thomas* v. *Hinkle,* 35 Ark. 450; *Leggett* v. *Grimmet,* 36 Ark. 496.

The court, at the request of appellees, gave the following instruction:

''If you find from a preponderance of the evidence that by false, fraudulent statements made by plaintiff to the defendant that the defendant relying upon said alleged statements so made by the plaintiff was induced to purchase from the plaintiff the jack in question, executing his note therefor for a stipulated sum, and you find from a preponderance of the evidence that said alleged statements were made by plaintiff to defendant, and were relied upon as true when in truth they were false, and the defendant was injured thereby, then you will find the issues for the defendant.''

Counsel for appellants insist that the court erred in giving this instruction, and also erred in refusing to give certain instructions asked by them on the question of warranty; but we can not agree with them in their contention. In the case of *Winter* v. *Bandel,* 30 Ark. 362, the court, in discussing a similar contention in regard to the false and fraudulent warranty of certain insolvent notes, said:

''Where there is a false warranty which contains elements of fraud and deceit in it, the party has his elec-

tion to affirm the contract and sue upon the breach of warranty, or repudiate it, offer a return of all which was received under it, and to rescind and sue for damages. Chitty on Contracts, 366 and 369; Chitty's Pls. 137 (margin); Dougl. 21; 2 East. 446; 2 Starkie, 162.

In this case there was an offer to rescind, and if there was fraud, the plaintiffs below thereby placed themselves in position to sue for full damages, regardless of the value of the insolvent notes. See also *Plant v. Condit,* 22 Ark. 454; *Weed* v. *Dyer,* 53 Ark. 159.

In the present case, appellants offered to return the jack and rescind the contract; and if there was fraud practiced upon them by appellees, they have placed themselves in a position to sue for full damages. This issue was submitted to the jury in the instructions given.

At the request of appellees, the court also gave the following instruction:

"As to Inez Warden, if you find that she was not interested in the purchase of the jack, but was merely an accommodation security on said note, then she could not be bound on said note, and it could only bind him, if you should find him liable."

Counsel for appellants excepted to the giving of this instruction for the reason that there was no evidence tending to show that appellant, Inez Warden, was interested in the purchase of said jack. In this position, we think he is correct. It will be noted that the instruction was given at the request of appellees. The only testimony given on this subject is that of the appellant, Hal Warden, and his testimony was not objected to by appellees. He testified that his wife was not interested in the purchase of the jack, and only signed the note given for its purchase price as an accommodation to himself. There is nothing in the record tending to contradict his testimony in this regard. Therefore, the undisputed evidence shows that she was a married woman at the time she signed the note, and that it was not made for her debt nor about a matter for which she could bind herself

personally. *Hardin* v. *Jessie,* 103 Ark. 246; *McCarthy* v. *Peoples' Savings Bank,* 156 S. W. 1023, 108 Ark. 151.

In the case of *Hardin* v. *Jessie, supra,* the court held: "When a married woman has only limited powers of contract, as, for example, only in connection with her separate estate or business, the burden of proof, in an action seeking to enforce liability against her, is upon the plaintiff to show that the contract was one which she had power to make."

It follows that the judgment against Hal Warden will be affirmed, and the judgment against Inez Warden will be reversed; and the case having been fully developed, the cause of action against her will be dismissed.