COURTESY FLOUR COMPANY v. WESTBROOK.

Opinion delivered November 8, 1920.

1.    SALES—IMPLIED WARRANTY.—In a sale of a carload of meal without express warranty of quality there is an implied warranty that it is of the kind and quality specified, and is wholesome and reasonably fit for use.

2.    SALES—EXPRESS AND IMPLIED WARRANTIES—DAMAGES.—Where goods are purchased under express warranty as to quality, the purchaser may rescind on discovering the inferior quality of the articles sold, but he is not bound to do so, and may retain the articles and sue on the warranty or recoup the damages when sued for the price; but where the contract is to deliver goods of a particular description or quality without express warranty, and the purchaser accepts them after discovery of the inferior

quality or after having had a fair opportunity to make such inspection, he waives the right to claim damages.

3.   SALES—WAIVER OF DAMAGES.—Where several carloads of meal were sold without express warranty as to quality, but with privilege of inspection, and the purchaser on inspection found that the meal was hot and musty and caked, and advised the seller, who wired, "unload car, advise extent, nature damage, give plenty of air," and the purchaser, instead of obeying instructions, sold the meal and waited five weeks before reporting the condition of the meal, he waived the right to damages.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; reversed.

*Reinberger & Reinberger,* for appellant.

1.   The question presented is, did appellant waive its right to the warranty of soundness of two cars of meal by trying to dispose of same, or was it compelled to elect whether it would rescind the sale, or keep the meal and sue for damages for the meal purchased for resale and human consumption, and upon inspection found to be unsound for the purpose intended? The court's instructions were erroneous. Appellant, having paid for the two cars of meal, had the right to retain it after ascertaining the bad condition thereof and sue for the difference in the purchase price of said cars and the amount he received from the damaged meal, including the expense of handling same. 76 Ark. 66. He had the right after he had paid for the meal to rescind the contract or keep the property and sue for damages. 110 Ark. 215. The sixteenth instruction given was error. 79 *Id.* 68; Benjamin on Sales (7 ed.), 893; 104 Ark. 573; 110 *Id.* 215.

2.   The court erred in refusing to give instruction No. 5, asked by appellant, that if there was no express warranty there was an implied one that the meal was fit for the use intended. 76 Ark. 352; 113 *Id.* 169; 53 *Id.* 155. Also in giving the instruction on its own motion. 79 Ark. 66.

*Harry T. Wooldridge,* for appellee.

The acceptance of goods after an opportunity of inspection precludes the buyer from making any claim as to defects in quality.  104 N. W. 179; 63 N. E. 57; 105 N. W. 945; 66 Atl. 366; 175 Pac. 18; 257 Fed. 369; 172 N. W. 500; 221 S. W. 519. There is no error in the instructions.

McCulloch, C. J.  This is an action to recover damages resulting from the breach of an alleged contract for the sale of two car loads of meal. Appellee was engaged in the grain and milling business in Pine Bluff and sold two car loads of meal to appellant, a dealer in Vicksburg, the two car loads being sold separately f. o. b. Pine Bluff and shipped under bills of lading to the shipper's order and attached to drafts drawn by appellee on appellant. The sales were made through a broker in Vicksburg, and the drafts to which the bills of lading were attached permitted inspection by the purchaser before acceptance. The shipments were about a week apart, and when they reached destination appellant paid the drafts and proceeded to unload the cars and found, according to the testimony which he adduced at the trial, that the meal was hot and musty and was caked, to the extent that a considerable part of it was unsalable and unwholesome. When the condition of the meal in the first car was discovered by appellant, he advised the broker through whom he had made the purchase and the latter communicated the information to appellee, who immediately sent to appellant a telegram of instructions in the following words: "Unload car, advise extent, nature damage, give plenty of air."

This occurred on March 20, 1918, and appellant finished unloading the first car, and when the second car arrived, finding it in the same condition, he unloaded that, too. He caused the meal to be taken care of by separating the good from the bad and giving it plenty of air in accordance with the instructions, and proceeded to sell it to local merchants in Vicksburg. Much of it was

found to be unfit for human consumption and was returned. The damaged portion of the two cars aggregated the price of $2,949.28, according to the invoices, and of this enough was sold to realize the sum of $1,-322.52, leaving a balance claimed by way of damages, including interest, commission and handling charges of $1,823.93, the amount sought to be recovered. According to the undisputed evidence appellant made no report to appellee until May 4, 1918, when a statement of the amount of damages was furnished. A trial of the issues before a jury resulted in a verdict in favor of appellee.

Several errors of the court are assigned in giving certain instructions, but as the material facts in the case are undisputed it is unnecessary to discuss the instructions of the court.

There was no express warranty of the quality of the meal sold, but there was an implied warranty that the commodity sold was of the kind and quality specified and was wholesome and reasonably fit for use. Under the terms of the shipment appellant had the opportunity to inspect the meal before he accepted it, and he did in fact inspect it immediately after the payment of the draft, and he then discovered that it was not in accordance with the specifications and was unfit for use.

The law on the subject is that where chattels are purchased under express warranty as to quality, the purchaser may rescind on discovering the inferior quality of the article sold, but is not bound to do so, and, on the contrary, may retain the articles purchased and sue on the warranty or recoup the damages when sued for the price. In case, however, the contract is to deliver goods of a particular description or quality without express warranty, and the purchaser accepts them after inspection and discovery of the inferior quality, or after having had a fair opportunity to make such inspection, he waives the right to claim damages for defects or inferiority of the goods sold.

The case of *Dana* v. *Boyd,* 2 J. J. Marsh. (Ky.), 588, one of the early cases on the subject in this country, after stating the rule that a purchaser who receives goods under those circumstances waives the defects, states the following exceptions to that rule: "To this there may be exceptions, as, when the defects are discovered afterward; in which case he must, on the discovery thereof, offer to restore, or where there has been fraud, in concealing or misrepresenting the bad qualities of the articles, or an express warranty. But, where the defects are palpable and are perceived at the time, he must reject the goods and set aside the contract *in toto,* and go for their full value, and can not be allowed to accept and then bring his action for the bad quality."

The rule announced in that case has been followed by a long line of cases in the Kentucky Court of Appeals. *O'Bannon* v. *Reff,* 7 Dana 320; *Kerr* v. *Smith,* 5 B. Mon. 533; *Jones* v. *McEwan,* 91 Ky. 377, 12 L. R. A. 399; *Forsythe* v. *Russell Co.,* 148 Ky. 492; *Caldwell* v. *Cunningham,* 162 Ky. 275. There are many other authorities sustaining that rule, and the overwhelming weight seems to be in its favor. *McCormick Harvesting Machine Co.* v. *Chesron,* 33 Minn. 32; *Rosenfield* v. *Swenson,* 45 Minn. 190; *McCormick Lumber Co.* v. *Winans* (Wis.), 105 N. W. 945; *Hazen* v. *Wilhelmie* (Neb.), 93 N. W. 920; *Ackerman* v. *Santa Rosa-Vallejo Tanning Co.,* 237 Fed. 369; *Northern Supply Co.* v. *Wangard,* 117 Wis. 624.

In the present case the purchaser, before making any use of the commodity purchased, notified the seller of the inferiority of the commodity, which was tantamount to a refusal to accept, and if that position had been maintained throughout the subsequent dealings with regard to the commodity purchased there would not have been any waiver of the right either to rescind the sale or to sue for the damage. Such, however, was not the effect of appellant's conduct in his subsequent dealings. He was instructed by appellee to "unload car, advise ex-

tent, nature damage, give plenty of air.'' This meant that appellant was authorized to unload the car and separate the meal so as to give it plenty of air and then to advise appellee of the extent and nature of the damage. This was the extent of the authority conferred, and appellant had no right to do anything more, and the implication which necessarily arises is that the instructions were to be obeyed within a reasonable time. Instead of obeying those instructions, appellant sold the meal and waited about five weeks before he made any report to appellee as to the extent and nature of the damaged condition of the meal. This can only be construed as a waiver of the right to complain of the inferior condition of the meal. The case of *Rosenfield* v. *Swenson, supra,* is directly in point. There was a delay of six weeks before complaint was made of the inferiority of the commodity sold, and the court in disposing of the case announced the applicable rule as follows: ''Where goods are sold and delivered upon condition as to kind and quality, it is the duty of the vendee to promptly examine them, and, if the conditions are not complied with, to notify the vendor within a reasonable time of his refusal to accept. If he unreasonably delays such notification, he must be held to have accepted in fact.'' The court held that the delay of six weeks was unreasonable.

In the case of *McCormick Lumber Co.* v. *Winans, supra,* the court held that a delay of eight months was unreasonable.

We are of the opinion that appellant's conduct in proceeding to sell the meal without authority from appellee and his delay in making a report to appellee of the condition in which he found the meal after unloading it constituted a waiver of the defective condition and an acceptance of it in fulfillment of the contract which precluded him from claiming damages.

There is nothing in our own decisions cited by counsel for appellant in conflict with the views here expressed. In fact, those cases are in accord with what we now hold.

*Pewett* v. *Richardson,* 79 Ark. 66; *Warden* v. *Middleton,* 110 Ark. 215; *Thompson* v. *Crenshaw,* 113 Ark. 169.

The judgment is therefore correct from the undisputed facts of the case and should be affirmed. It is so ordered.