MYERS v. COLE.
4-6005                                   141 S. W. 2d 840
Opinion delivered June 24, 1940.

*R. S. Wilson,* for appellant.

*C. R. Starbird,* for appellee.

SMITH, J.  On July 29, 1939, appellee Cole filed suit against appellant, Myers, in the circuit court of Crawford county, for $440.48, alleged to be due him on the sale of cabbage plants to appellant, under a contract between the parties made about January 1, 1939, whereby appellee was to grow cabbage plants on his farm near Raymondville, Texas, for sale to appellant.

Appellant filed an answer and cross-complaint, in which he alleged that an accounting would be required, and upon his motion the cause was transferred to the chancery court.

Appellant contends that he purchased the plants under a verbal contract which warranted the soundness of the plants.  He insists that there was an express contract of warranty, and that, if not so, there was an implied contract of warranty, and this appears to be the principle question of law in the case.  Appellant insists that many of the plants were unfit for replanting, and that he should have credit therefor.

Upon the final submission of the cause the chancellor prepared a written opinion, in which he announced his findings of fact and conclusions of law; and we find no error in either respect.

A few days after the verbal contract had been entered into, appellant wrote appellee in part as follows:  ''I

don't believe I mentioned it in our conversation, but, of course, we would not be forced to take these plants were they to develop any serious disease or be infested with aphis. In other words, if there was anything wrong with them that prevented their being shipped into the State of Arkansas.''

Appellee appears to have concurred in this construction of the contract, and the principal question of fact appears to be the extent to which the plants became affected with aphis.

Appellant, by the contract, was required to furnish, and did furnish, the seed for planting, and 16 acres were planted. When the seed had sprouted, it was found that the young plants were infested with aphis, and several letters were exchanged on the subject. Appellant suggested the use of a spray, and agreed to pay one-half the cost thereof. The spray was used, and samples of the plants were furnished from time to time, until finally appellee wrote appellant that the field was practically free of aphis.

On February 13th, appellant wrote appellee that he would send a truck, and if the plants were in good condition would get a truckload of them. This letter contained suggestions about additional spraying for aphis. On February 20th, a truckload containing 151 baskets was loaded and paid for by the truck driver with a draft drawn on appellant.

Later, appellant sent his son to Texas to take charge of the marketing of the plants. There is no question that the son was the agent of his father, and was apparently clothed with all the authority of a general agent. He was the only person on the scene representing appellant. Evidently, he had the authority to refuse to accept any plants infested with aphis.

Appellee received a telegram on February 23rd to ship 250 baskets of plants. These were paid for by a draft drawn on appellant by his son. Indeed, in this draft was $50 additional which the son said he needed for expense money. This draft was dishonored.

On March 7th, the third truckload of plants, supposed to contain 495,000 plants, was shipped out, together with 25 crates of onions. In payment therefor, a draft was drawn by young Myers, which included $35 advanced him as expense money. Young Myers also ordered out 420 baskets of plants to be shipped to Pharr, Texas.

These items were all included in the account sued on, as were also a charge of $32.50 for 200 baskets at 12½ cents each, and 2 bales of moss at $2 each used in packing the plants, and certain lumber and labor for and on the trucks.

The contract required the plants to be tied together in-bunches of 100 each, and were to be paid for at the price of 40 cents per thousand. The account rendered and sued on was for $440.48, but when correctly added, together with credits given, totaled $480.48. The credits given were for the drafts which were paid, and for baskets belonging to appellant which appellee kept after the plants had been shipped out.

By way of answer and cross-complaint, appellant alleged that 403,000 of the plants shipped out by appellee were infested with aphis and were worthless for that reason. It was also alleged that there was a shortage in the count of the plants, amounting to $148.80, and that a loss was sustained of $120.00 by reason of heated plants, which were worthless on that account.

The court found the fact to be that appellee was not responsible for the damage to the plants on account of heating, as this damage was occasioned by the negligence of appellant's son as agent and the truck driver; and we concur in that finding. It appears the agent and truck driver made a journey over into Mexico while the plants were being gathered and packed for shipment.

The court below found that the contract was a mere agreement to furnish plants of a particular description. The first truckload was received and paid for without Government inspection, or other inspection except that of appellant's son and the truck drivers, and appellant's

own inspection upon delivery. After refusing to pay the draft covering the second truckload of plants, appellant ordered a third truckload, which was received without federal inspection. He kept them all and sold what he could.

The court below was of the opinion that, even though there had been an express warranty, there could be no recovery for its breach, citing the case of *Courtesy Flour Co.* v. *Westbrook,* 146 Ark. 17, 225 S. W. 3, to support that holding.

It was held, in the case just cited, that the acceptance of purchased goods, after discovery of their inferior quality or after having a reasonable opportunity to make an inspection, waives the right to claim damages for the breach of the warranty. The testimony appears sufficient to make that holding applicable here. Evidently, the son was sent to Texas to have the opportunity for inspection before the plants were shipped away in the trucks, and the balance were later received and were sold so far as the record shows to the contrary.

In the decree, appellee was allowed to charge the advance made to appellant's son and agent as expense money, and appellant does not appear to question that finding.

The court found that there was a shortage in the count of the plants of approximately 15 per cent., and allowed appellant that credit, from which action appellee prayed a cross-appeal, which may be disposed of by saying that this finding does not appear to be contrary to the preponderance of the evidence.

As to the $4 item for the moss used in packing the plants, it appears that this was a service not required by the contract which was furnished at appellant's request. It was, therefore, proper to charge him with that item.

The controversy as to the baskets may be disposed of by saying that appellee was required to purchase baskets to prevent delay in shipment. Appellant was obligated

to furnish at his own cost the baskets, and it is not disputed that appellee was required to purchase and had paid 12½ cents for the baskets. This charge was properly allowed. After the last of the plants had been shipped. appellee had on hand 220 baskets belonging to appellant. These appellee was not obligated to purchase, but he allowed credit for them at 10 cents each, and appellant admits that this was their fair value. There was, therefore, no error in the finding of the court in respect to these baskets.

Upon these findings judgment was rendered in favor of appellee for $381.17, and as we are unable to say that this finding is contrary to the preponderance of the evidence it is affirmed.