SIEGEL, KING & COMPANY *v.* PENNY & BALDWIN.

Opinion delivered February 20, 1928.

1.  SALES—BREACH OF CONTRACT—REMEDIES OF BUYER.—On breach of warranty that pipe purchased was in good serviceable condition, a buyer could either rescind on discovering the inferior quality of the pipe, or retain the pipe and sue on the warranty, or recoup damages when sued for the price.

2.  SALES—RESCISSION—REASONABLE TIME.—Where pipe was purchased with express warranty that it was in good serviceable condition, and complaint was made within four weeks that it was unfit for the use intended, and suit was brought within three months after the purchase, a finding that the rescission was made within reasonable time is warranted.

3.  SALES—TENDER ON RESCISSION.—Where pipe was purchased under express warranty of its fitness for use in the pipe line to be used in pumping water from a creek, the buyer could rescind for breach thereof without tendering the pipe at its place of purchase, where the tender would have been refused.

4.  SALES—PLACE OF TENDER ON RESCISSION.—Where pipe was purchased in Little Rock to be used in Searcy for a pipe line for pumping water from a creek, and where the test of the pipe could only be made by attempt to use it in Searcy, the buyer's offer to return the pipe could be made where the test was made and breach of warranty discovered.

5.  SALES—TESTIMONY AS TO WARRANTY.—Where the buyer, who purchased pipe on an express written warranty that it was in good serviceable condition with no leaks, sued the sellers to recover the price paid, it was not error to admit the buyer's testimony that he would not have purchased the pipe even after seeing it, if the sellers had not given him the express warranty.

6.  SALES—EXCLUSION OF TESTIMONY.—In a buyer's action against sellers to recover the price paid for pipe on account of a breach of express warranty of serviceability, it was not error to exclude the sellers' testimony that they had sold pipe to other customers, who made no complaint.

7.  SALES—EXCLUSION OF TESTIMONY.—In a buyer's action against sellers to recover the price paid for pipe on account of a breach of express warranty of serviceability of second-hand pipe, it was not error to . exclude the sellers' testimony that they did . not undertake to guarantee the pipe to be as good to all intents and purposes as new pipe.

8.  SALES—BREACH OF WARRANTY—RETURN OF PRICE.—Where there was a breach of warranty that second-hand pipe purchased was in good condition, with no leaks, the buyer had a right to demand a return of the price.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*E. G. Shoffner,* for appellants.

*Brundidge & Neelly,* for appellees.

SMITH, J.   On the 15th day of September, 1926, R. H. Baldwin, a member of a copartnership doing business as Penny & Baldwin, hereinafter referred to as the plaintiffs, came from Searcy, where they were engaged in the performance of a paving contract, to appellants' place of business in the city of Little Rock, in quest of second-hand pipe, to be used in running a water-line in connection with a paving project.

Baldwin testified that he saw Mr. Siegel, a member of appellant firm, which is a copartnership doing business as Siegel, King & Company, hereinafter referred to as the defendants, at the defendants' office in Little Rock.   Baldwin advised Siegel that he wanted to buy enough pipe to furnish a pipe line a mile and a half or more in length, to be used in pumping water from a creek, and that sound pipe which did not leak would be required for the purpose.   Siegel advised Baldwin that he could fill the order, and they went into defendants' storage yard, where they saw several piles of pipe.   No test of the pipe was made at the time.

A contract was entered into, which was evidenced by the following writing:

"Little Rock, Arkansas, September 15, 1926.

"It is hereby understood that Penny & Baldwin of Searcy, Arkansas, have this day bought of Siegel, King & Company of Little Rock, 10,560 feet of two-inch second-hand pipe, as inspected by Mr. R. H. Baldwin, at the price of $.09 per foot f. o. b. cars Little Rock.

"This pipe is to be good serviceable condition, with no leaks from end to end.

"Terms:   Sight draft bill of lading attached.

"Couplings are to be furnished.

"Prompt shipment."

The pipe was loaded for shipment to Searcy, and a draft with a bill of lading attached was drawn on Penny

& Baldwin, which was duly paid, and the pipe was delivered in Searcy about four days later.

When the pipe was received, Penny & Baldwin were engaged in laying brick, as called for by their paving contract, and it was three or four weeks before they required the use of the pipe line. When the construction of the pipe line was begun, it was found that fifty per cent. of the joints were worthless, and that the pipe leaked at and around the joints and between the joints so that the pipe was worthless for the purpose for which it was purchased. Such is the testimony on the part of the plaintiffs, but it was developed in the cross-examination of plaintiffs' witnesses that only about nine hundred feet of the pipe was connected up, and it is insisted that the bad results obtained were due to the lack of skill on the part of the laborers who made the connections of the pipe joints.

Plaintiffs brought suit, and alleged that the pipe was worthless, and prayed judgment for $950.40, the amount paid for the pipe, for $82.90 freight paid, and $50 for unloading and handling. The jury returned a verdict for $950.40, the amount of the purchase price, and from a judgment accordingly is this appeal.

Numerous errors are assigned for the reversal of the judgment, those requiring discussion being as follows: That there was no restitution or tender of the pipe within a reasonable time; that, when a tender was made, the pipe had deteriorated from exposure and could not be returned in the condition in which it was when sold; that error was committed in refusing certain instructions; and in admitting and in excluding certain testimony.

The first and most important question is, of course, whether there was a breach of the express warranty that the pipe was in good serviceable condition, with no leaks from end to end. The testimony summarized above supports the finding that there was a breach of the warranty, and the law applicable to that condition is restated in the case of *Keith* v. *Fowler,* 169 Ark. 176, 273 S. W. 706,

by quoting from the case of *Courtesy Flower Co.* v. *West-brook,* 146 Ark. 17, 225 S. W. 3, as follows:

" 'The law on the subject is that, where chattels are purchased under express warranty as to quality, the purchaser may rescind on discovering the inferior quality of the article sold, but is not bound to do so, and, on the contrary, may retain the articles purchased and sue on the warranty, or recoup the damages when sued for the price. In case, however, the contract is to deliver goods of a particular description or quality, without express warranty, and the purchaser accepts them after inspection and discovery of the inferior quality, or after having had a fair opportunity to make such inspection, he waives the right to claim damages for defects or inferiority of the goods sold.' "

The instructions given by the court required the jury to find that the pipe was not serviceable and leaked before finding for the plaintiffs, but it is insisted that, even though the testimony supports the finding that the pipe was not serviceable and leaked, there was no sufficient tender to the appellants of the pipe, nor was the tender made within a reasonable time.

As we have said, three or four weeks elapsed before any test of the pipe was made by attempting to use it, and, when this test was made, it was found that the pipe did not hold water, and complaint was made of that fact to defendants, who advised plaintiffs to take the pipe to a blacksmith or a plumber. Later plaintiffs took up with defendants the resale of the pipe, and defendants offered them $15 per ton for the pipe f. o. b. delivered at Little Rock. Siegel testified that the pipe would weigh about twenty tons, and that the offer for the pipe amounted to about $300, less the reloading and freight charges. The negotiations for a settlement were fruitless, and on December 21, 1926, plaintiffs advised defendants that the entire contract would be rescinded and the pipe would be held in Searcy subject to the plaintiffs' order, and Baldwin testified that the pipe was in as good condition as when shipped.

It thus appears that three months elapsed between the date of the sale and the date of a definite announcement of an intent to rescind, and it is insisted that the court should have declared as a matter of law that this offer was not made within a reasonable time. The court told the jury that plaintiffs could not rescind unless that offer was made within a reasonable time, and, the jury having found as a matter of fact that the offer was made within a reasonable time under all the circumstances, we are unwilling to hold to the contrary as a matter of law.

It is insisted that a rescission could not be effected without a tender of the article sold in Little Rock, but all the testimony shows that such a tender would have been refused if made, as the defendants have at all times insisted, and now insist, that there was no breach of the warranty.

The test of the pipe which the warranty contemplated could only be made by an attempt to use the pipe in Searcy, and, to make this test, plaintiffs were required to pay both freight and unloading charges, which items were not included in the jury's verdict. The offer to return was made at the place where, in contemplation of the parties, the test was to be made, and where it was made, and where a breach of the warranty was discovered.

The instructions requested by defendants were to the effect that a tender of the pipe at Searcy, the place of the test, was not sufficient. But there would have been no expense of reloading and of return freight had there been no breach of the warranty; on the contrary, these items were the direct result of the breach of the warranty, and we think the court was correct in not requiring plaintiffs to incur these items of expense, especially so as the undisputed testimony shows no tender of any kind would have been accepted. 24 R. C. L., p. 326, chapter "Sales," § 511.

The court permitted Baldwin to testify that he would not have purchased the pipe, even after seeing it, if defendants "had not given that written agreement,"

and that the pipe was not suitable for the purpose for which he bought it, and that "he could not use it at all."

We think there was no error in admitting this testimony, as it amounted only to saying that plaintiffs relied upon the warranty, as they had the right to do, and that there was a breach of the warranty—an essential thing to prove to sustain any recovery.

The court excluded testimony offered by defendants to the effect that they had sold pipe to other customers, who made no complaint, and that Siegel "did not undertake to guarantee the pipe to be as good, to all intents and purposes, as new pipe."

There was no error in excluding the first mentioned testimony, as the pipe sold other customers may not have been of the same kind; there may have been no warranty, and those purchasers may have been damaged without complaining. As to the last-mentioned testimony, it may be said that it was not contended that the pipe should be as good, to all intents and purposes, as new pipe. The warranty sued on was that the pipe was in good serviceable condition, with no leaks from end to end, and the jury found, under proper instructions, that there was a breach of this warranty, and, this being true, the plaintiffs had the right to demand a return of the purchase money.

As no error appears, the judgment must be affirmed, and it is so ordered.