Root Refineries, Inc., *v.* Forrest E. Gilmore Company.

Opinion delivered March 31, 1930.

*Marsh, McKay & Marlin,* for appellant.
*Mahony, Yocum & Saye,* for appellee.

HUMPHREYS, J. This suit was instituted on August 1, 1926, in the Second Division of the chancery court of Union County, by appellee against appellant to recover $18,442.75, the alleged balance due it for furnishing the material and constructing an absorption gasoline plant, known as the Gilmore Gasoline Plant, for appellant adjoining its refinery plant near El Dorado, for the purpose of taking the gas arising from the other parts of its refinery plant and extracting the gasoline contents therefrom, and converting it into a merchantable article. Appellee agreed to furnish the material and construct the plant for $24,000, payable 25 per cent. on presentation of invoices, 25 per cent. in thirty days from date of the first payment, 25 per cent. sixty days from the date of the first payment, and 25 per cent. ninety days from the date of the first payment; the final payment to be dependent, however, on the plant showing by a ten-day test, conducted by appellant under the supervision of appellee, an efficiency of 105 per cent. as determined by standard charcoal tests.

The contract was made the basis of the suit; appellee alleged that it had complied therewith in every respect, but that appellant had failed and refused to make the three last payments provided for therein.

Appellant had refused to make the payments or conduct the test provided for in the contract on account of thirty-five alleged defects in the construction of the plant specifically set out in a letter delivered by it to appellee on June 13, 1926.

The contract provided that the plant should be constructed out of new materials, and specified the kind of

equipment to be used in the construction thereof which included 1 Bubble-Type Absorber.

Appellant did not file an answer to the original complaint referred to above for the reason that, after filing the complaint, the parties met to discuss and adjust, if possible, their differences, which meeting resulted in a supplemental contract providing for a ten-day test run which appellee guaranteed would produce certain results. The supplemental contract provided that, in case such results were not obtained by the ten-day test run, appellee should have the right to make a thirty-day test run to determine whether such results could be produced. One of the warranties on the part of appellee in the supplemental contract was that the test run would produce gasoline of good odor. At the conclusion of the ten-day test run on October 13, 1926, the appellant, acting through its vice-president, D. P. Hamilton, made the following indorsement upon the supplemental contract:

"Referring to above contract, of which this is a copy, at this date all obligations of Gilmore Company have been complied with, except odor. Gilmore is hereby granted an extension of thirty days from this date, or until November 12, to meet the odor requirement. Root Refineries, Inc. By D. P. Hamilton, V. P."

Immediately after this indorsement was made, appellee conducted the thirty-day test run in an effort to correct the odor of the gasoline, and the gasoline produced convinced appellant by actual use of same in two automobiles that the defect in odor had been cured, whereupon it directed appellee to call at its office in New Orleans, and get the balance of the purchase price for the plant. It did so, and on November 12, 1926, received $10,000, and on November 30, 1926, $5,000 more, leaving a balance due it on the contract price of $3,000. Subsequently, and, after making the last two payments, appellant discovered that the odor in the gas being produced by the plant had not been corrected, and refused to pay the unpaid balance of the purchase money.

Appellee then amended its original complaint praying judgment for $2,922.33 instead of $3,000, due to the fact that it had theretofore omitted to give a few small credits to which appellant was entitled.

Appellant filed an answer to the amended complaint denying any liability under the provisions of the contract, and a cross-complaint for $4,325 on account of deficient material used in the construction of the plant, $24,302.95 on account of losses sustained by reason of gasoline lost on account of being off color and of bad odor, penalties, etc., and $21,000, which had been paid upon the purchase price, making a total claim of $49,627.95.

Appellee then filed an answer denying the material allegations in the cross-complaint.

The cause was submitted to the trial court on June 24, 1929, upon the pleadings and testimony adduced from which the court found that appellant owed $2,922.33, representing the balance of the purchase price which it had not paid, but that appellant was entitled to an off-set amounting to $1,800 for the cost of a Bubble-Type Absorber which had not been used in the construction of the plant as provided in the original contract. A different kind of an absorber had been used which leaked and failed to give complete satisfaction. It was not discovered until after the last thirty-day test run, and after the last two payments had been made that the absorber used in the construction of the plant was not a Bubble-Type Absorber. As soon as this was discovered, the absorber used in the construction was torn out and a Bubble-Type Absorber installed by appellant at an expense of $1,800. After installing the new Bubble-Type Absorber appellant continued to use the plant.

Both appellant and appellee have appealed from the decree of the court, appellant contending that it should have been allowed $9,194.64 of its counterclaim from which should have been deducted a balance of $2,922.33 due on the contract price, and a judgment rendered in

its favor against appellee for the sum of $7,272.30; and appellee contended that the cross-complaint should have been dismissed for the want of equity, and judgment rendered in its favor for $2,922.33 with interest thereon at the rate of 6 per cent. per annum from November 12, 1926.

Appellant construes the contract as one expressly warranting the kind and character of materials to be used in the construction of the plant, and that when installed it would produce gasoline of water white color and of good odor, and relies for a reversal of the decree and a net recovery upon its cross-complaint of $7,272.30 under the rule or doctrine that a purchaser may retain machinery or other articles purchased under warranty, and either sue on the warranty for his damages or recoup damages when sued for the purchase price. The rule relied upon is a correct statement of the law, so announced in the cases of *Courtesy Flour Co.* v. *Westbrook,* 146 Ark. 17, 225 S. W. 3, and *Keith* v. *Fowler,* 169 Ark. 176, 273 S. W. 706, and reaffirmed in the case of *Siegel-King & Co.* v. *Penny & Baldwin,* 176 Ark. 336, 2 S. W. (2d) 1082; but, of course, the rule would have no application to acceptances or retentions of property by purchasers after tests had been made pursuant to provisions in the contract showing the fulfillment of the warranties or compliance with them; the test would conclude the purchasers right to a recovery upon the warranties except for defects not discoverable by the test. The very purpose of the test in the instant case was to determine whether appellee had complied with its warranties as shown by the contract itself, and the indorsement of appellant on the supplemental contract. It is not contended that any fraud was practiced by appellee upon appellant in making either the ten-day or the thirty-day test run. Appellant agreed to, and was bound by the result of the tests showing full compliance with its warranties, except as to latent defects not discoverable by the tests. The failure of appellee to install a Bubble-

Type Absorber was not discoverable by the test. In order to determine whether a Bubble-Type Absorber was installed in accordance with the contract, it was necessary to take it out and break it in two. The absorber installed leaked and failed to give satisfaction, so appellant took it out and installed a Bubble-Type Absorber, and in doing so discovered that it was not the type contracted for. This discovery was not made until long after both tests had been made, and after it had made the second and third payments on the contract price. Appellant was not estopped from recouping its damages in this suit for the balance of the purchase price on the warranty that appellee would use a Bubble-Type Absorber in the construction of the plant. The undisputed testimony showed that the cost of such a Bubble-Type Absorber was $1,800, so the trial court properly allowed the cost thereof as an off-set against the balance due on the contract price.

The decree is therefore in all things affirmed.