J. S. GRAMLING and Sarah GRAMLING
*v.* W. E. JENNINGS

81-122                                           625 S.W. 2d 463

Supreme Court of Arkansas
Opinion delivered December 7, 1981
[Rehearing denied January 11, 1982.]

*Floyd Clardy,* of *Boswell & Smith, P.A.,* for appellants.

*Sidney P. Davis, Jr.,* of *Davis, Bassett, Cox & Wright,* for appellee.

DARRELL HICKMAN, Associate Justice. This is a medical malpractice case. J. S. Gramling and his wife, Sarah, appeal from a judgment based on a jury verdict that found appellee Dr. W. E. Jennings not negligent when he severed Mrs. Gramling's right ureter during surgery for the removal of a suspected ovarian tumor. Four days later a urologist repaired the ureter but complications resulting from the ligated ureter prolonged Mrs. Gramling's recovery. The Gramlings argue three errors for reversal: The court was wrong in failing to give two instructions to the jury, AMI 301 and AMI 303; and, the court was wrong in allowing testimony that this was the first time in over twelve hundred pelvic surgeries the defendant had severed a ureter.

We find that the court erred in allowing the opinion testimony that the defendant was not negligent and reverse the judgment.

An expert witness for the defendant, Dr. Turley, who repaired the ureter, was allowed to testify that in his opinion

the appellee, Dr. W. E. Jennings, was not negligent when he severed Mrs. Gramling's ureter. The answer was: "No, I don't think Dr. Jennings was negligent." The appellee defendant gave the same opinion. The appellants contend that this testimony was tantamount to telling the jury what result to reach and beyond the scope of opinion testimony that is permitted by Ark. Stat. Ann. § 28-1001, Rule 704, (Repl. 1979). Rule 704 provides:

> Testimony in the form of an opinion or inference, otherwise admissible is not objectionable because it embraces an ultimate issue to be tried by the trier of fact.

There is no doubt that the opinion by the expert did go to the ultimate issue which was whether Dr. Jennings was negligent. In our judgment it was an expression of an improper opinion and should not have been admitted. It is difficult to draw a line between opinion testimoy that merely embraces the ultimate issue and opinion testimony that tells the jury which result to reach. Rule 704 is based on the federal rule and according to the advisory committee notes on Rule 704, it was not intended that all opinion would be admissible. 3 Weinstein's Evidence 704-2 (1981); 11 J. MOORE FEDERAL PRACTICE §§ 704.02, 704.10 (2nd. ed. 1976 & Supp. 1980-81). For example it would be a proper question in a will contest to ask, "Did the testator have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" But it would be improper to ask an expert witness: "Did the testator have capacity to make a will?" McCORMICK ON EVIDENCE § 12 (2d ed. 1972); 11 J. MOORE FEDERAL PRACTICE § 704.01[3], *supra.*

The appellee argues that our decision in *McClellan* v. *French,* 246 Ark. 728, 439 S.W. 813 (1969), which was decided before we adopted Rule 704, holds that an expert witness may testify as the one did in this case. In *McClellan* the question and answer were:

> Q. In your opinion Dr. French was not guilty of malpractice in suturing this wound?

A. He was not.

We held in *McClellan* that the opinion was admissible. Language in the *McClellan* opinion suggests that the subject matter was such that the average juror would have no information or experience upon which to formulate an intelligent conclusion unless testimony of such a nature was permitted. Actually the question and answer in the *McClellan* case and the question and answer in this case are quite different. In this case it is a bald statement of an opinion as to the ultimate issue. In the *McClellan* case it was whether negligence was committed in suturing a wound, which related to a specific fact. We could give a broad interpretation to *McClellan* as appellee suggests but decline to do so because in our judgment that would run contrary to the real intent of Rule 704, adopted after *McClellan* was decided.

Rule 704 uses the word "embrace." That word means that opinion testimony should not be rejected simply because it touches upon the ultimate issue, as quite often expert testimony does. At the same time "embrace" is a word of limitation, suggesting that opinion testimony which simply tells the jury what to do is not permitted. If such testimony were to be permitted, the rule could easily have said so. In our judgment the opinion testimony in this case was erroneously admitted and since the appellant offered no expert testimony it had to be of a prejudicial nature. For this reason the judgment is reversed and the cause remanded for a new trial.

The appellants' argument that the trial court was wrong in failing to give AMI 301 and AMI 303 to the jury is without merit. In this case the appellants offered no expert testimony that the doctor was negligent. The doctor produced expert medical testimony that there was no negligence. When the court instructed the jury it gave the first paragraph of AMI 1501 which defines the duty of care owed by a physician to the patient. The appellants argue that since this is a type of medical malpractice case where medical testimony is not necessary to make a factual issue for the jury, the appellants were entitled to AMI Instructions 301

and 303 which repectively define negligence and ordinary care. The appellants assert that the standard of care, when medical experts are not necessary, is ordinary care. Therefore, without the two proffered instructions, the appellants' theory of the case was not presented to the jury. Furthermore, it is argued that AMI 1501 only presented the appellee's theory of the case. In other words, appellants argue that their proffered instructions on ordinary care and negligence should have been submitted so that the jury could decide the factual issue of negligence based upon their common understanding of what is required of all persons regardless of whether they are physicians.

Chapter 15 of AMI, the malpractice chapter, states that "The gravamen of most Arkansas malpractice actions has been negligence. When a plaintiff alleges that the physician who diagnosed his ailment or treated or operated upon him was negligent, AMI 501 applies." The 1980 Note on Use [revised] of AMI 1501 reiterated this position. Here the cause of action is premised on negligence. There is no suggestion in our Model Jury Instructions or any of our cases that AMI 301 or 303 is appropriate in a medical malpractice case. *See Pry v. Jones*, 253 Ark 534, 487 S.W. 2d 606 (1972). To the contrary, the note on use following AMI 301 (negligence) refers to AMI 1501 for the definition of negligence on the part of a physician. AMI 303 (ordinary care) also refers to AMI 1501 for the standard of care required by a physician. The second paragraph of AMI 1501 requires the jury to consider only the evidence presented by experts as to the requisite degree of skill and learning required of physicians. However, that paragraph was not given. Instead, AMI 102 was used as indicated by the note on the use of AMI 1501, which instructs the jurors to use their common knowledge and consider the evidence in light of their own observations and experiences in the affairs of life. We hold that the trial court was correct in refusing to give AMI 301 and AMI 303.

The appellants' final contention is that the trial court erred "in allowing testimony and argument concerning evidence about the percentage of ureters severed in similar surgeries and this was the first time he severed a ureter."

Appellee responds that this issue should not be considered on appeal inasmuch as the appellants made no objection to the introduction of the evidence nor the argument. Even so, in view of a retrial, we deem it necessary to discuss the issue. We are of the view that the percentage evidence of appellee's successful performance in similar operations is irrelevant to the issue of negligence as to this particular operation. The conditions existing in other operations over a period of years and the results thereof are not necessarily relevant to the present facts. *See Siegel, King and Company* v. *Penny and Baldwin,* 176 Ark. 336, 2 S.W. 2d 1082 (1928). Here the jury could improperly or impermissibly infer that, based on the defendant's prior successful and uneventful conduct, he was therefore not negligent under the facts of the instant case.

Reversed and remanded.

Holts, J. dissents.

FRANK HOLT, Justice, dissenting. I disagree with the majority's view that the court erred when it allowed opinion testimony that the defendant was not negligent when he severed Mrs. Gramling's ureter. In *McClellan* v. *French,* 246 Ark. 728, 439 S.W. 2d 813 (1969), as the majority notes, we held that an expert witness, a doctor, was properly permitted to testify that the suturing of a bleeding wound, in his opinion, was not "malpractice." There, as here, the argument was made that this opinion was the ultimate question or issue for the jury to determie. There we noted that the expert witness used and understood the word "malpractice" as it related to the "standard medical procedure in the community." Here, as I view the record, the expert witness also based his opinion upon the recognized standards and procedures of the medical profession in the community. Further, I do not agree that our recent Rule 704, which the trial court relied upon, circumscribed the admissibility of the opinion testimony in this case. Neither of the doctors told the jury how to rule, and it was free to accept or reject their testimony as any other witness.

Neither was there error in allowing testimony and argument conerning evidence as to the percentage of ureters

severed by appellee in similar surgeries since, as appellee correctly points out, the appellants made no objection to this deposition testimony nor the argument made to the jury.

I would affirm.