Cite as 2023 Ark. App. 513

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-22-460

| | | |
|---|---|---|
| BRYAN SMITH | | **Opinion Delivered** November 8, 2023 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-19-980] |
| V. | | |
| | | HONORABLE MICHAEL MEDLOCK, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**RITA W. GRUBER, Judge**

A Crawford County jury convicted appellant Bryan Smith of attempted first-degree battery of a law enforcement officer and fleeing and sentenced him to concurrent sentences of 480 months' and 180 months' imprisonment.[1] On appeal, appellant challenges the sufficiency of the evidence to support the attempted first-degree battery conviction as well as three evidentiary rulings. We affirm.

I. *Facts*

---

[1]This case returns after we remanded to settle and supplement the record with the verdict forms. *See Smith v. State*, 2023 Ark. App. 209.

On October 26, 2021, the State filed an amended felony information charging appellant with attempted first-degree battery of a law enforcement officer,[2] fleeing (vehicle), and first-offense DWI.[3] The information included a habitual offender sentencing enhancement, asserting that appellant had been previously convicted of four or more felonies. A jury trial was held on March 15, 2022.

Trooper John Bass with the Arkansas State Police testified that he came into contact with appellant on September 1, 2019. Bass had been informed by the Crawford County Sheriff's Department that appellant had active warrants and was staying in the Lancaster Road area. Bass parked in the area and looked for two vehicles—a white four-door sedan and a black Dodge Durango—that appellant may have been riding in or driving. After an hour, Bass went on patrol and observed the vehicles near the intersection of "282 and 71." He initiated a traffic stop of the Durango for having a broken taillight. The Durango stopped on a private road and had two occupants—a female driver and a male passenger. Bass identified the passenger as appellant on the basis of information he had received.

Bass testified that appellant was not forthcoming with his identification and became argumentative when Bass told him he was not wearing his seatbelt, at which point Bass asked appellant to get out of the vehicle. Bass stated that appellant began to play "cat and mouse"

---

[2]Under Ark. Code Ann. § 5-13-201 (Supp. 2023), first-degree battery of a law enforcement officer in the line of duty is a Class Y felony. However, because this was an attempt, the offense was a Class A felony under Ark. Code Ann. § 5-3-203 (Repl. 2013).

[3]The DWI charge was dismissed.

with him, causing Bass to pull out his taser in order to get appellant to comply. Bass unsuccessfully attempted to remove appellant from the passenger side. Bass then tried to reach inside the driver's window and pull appellant from the passenger side of the vehicle as appellant was "actively trying to put the vehicle into drive." Appellant succeeded in putting the car in drive, and Bass returned to his patrol car to pursue appellant. Bass performed a PIT (precision immobilization technique) maneuver by intentionally ramming the front of his Charger into the side of the Durango to disable it. The Durango was still operable, but the back-left wheel or axle had broken. Bass then turned his Charger around to create some distance in case appellant had a firearm and parked it to prevent appellant from gaining access to the county road. Bass opened his door and stood behind it for further protection in the event appellant had a firearm. Bass testified that appellant then drove the Durango directly at him, at which point Bass took a few steps backwards and deployed his firearm to disable the vehicle and prevent his injury.[4] Bass said that he would have been hit by appellant had he not taken those actions. The dashcam video from Bass's patrol car was introduced into evidence and played for the jury.

On cross-examination, Bass said that he fired three shots, which hit the grill, a tire, and the driver's-side door. He stated that appellant was driving about five or ten miles an hour, and the vehicle veered to the right after hitting the front of the patrol car and traveled toward the entrance of the driveway.

---

[4]Appellant was the driver and only occupant at this point; the female had exited the vehicle after the initial stop.

Trooper Roy Moomey of the Arkansas State Police responded to oversee the crime scene and investigate the incident involving Bass and appellant. Moomey conducted an interview with appellant, and the audio recording of the interview was played for the jury. In the interview, appellant indicated he did not intend to hit or hurt Bass but was trying to run from him. Moomey reviewed the video from the incident and opined that Bass was justified in his use of force, meaning that he did not use excessive force. Moomey explained that officer-involved shootings are always investigated to determine whether they are justified. He elaborated that they "gather all the evidence, do all the interviews and then we will present that case to the prosecutor to determine whether or not charges [against the officer] are justified." Moomey said that his investigation confirmed his belief that appellant made a choice to push the gas pedal while the vehicle was pointed toward Bass.

Tabitha Medford, deputy clerk of the Crawford County Circuit Clerk's Office, testified for the State. Through her testimony, the State introduced an arrest warrant issued as a result of appellant's failure to appear for court on January 24, 2022, in the case at issue. She testified that the court also ordered a bond forfeiture.

At the close of the State's case, appellant moved for a directed verdict on attempted battery arguing that the State failed to prove that appellant intended to cause serious physical injury. The circuit court denied the motion. The defense did not call any witnesses and renewed its motion for directed verdict, which was again denied. The jury found appellant guilty of attempted first-degree battery of a law enforcement officer and fleeing. Appellant

4

was sentenced as a habitual offender to respective sentences of forty years' and fifteen years' imprisonment, to be served concurrently. This appeal followed.

## II. *Sufficiency of the Evidence*

The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Wheaton v. State*, 2021 Ark. App. 281. Evidence is viewed in the light most favorable to the State; only evidence that supports a verdict is considered. *Id.* Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact—in this case, the jury. *Gillard v. State*, 2019 Ark. App. 438, at 2, 586 S.W.3d 703, 705.

A criminal defendant's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

A person commits battery in the first degree if "the person causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-13-201(a)(3) (Supp. 2019). "When causing a particular

result is an element of the offense, a person commits the offense of criminal attempt if, acting with the kind of culpable mental state otherwise required for the commission of the offense, the person purposely engages in conduct that constitutes a substantial step in a course of conduct intended or known to cause the particular result." Ark. Code Ann. § 5-3-201(b) (Repl. 2013). The conduct is not a "substantial step" unless it is "strongly corroborative of the person's criminal purpose." Ark. Code Ann. § 5-3-201(c).

Appellant argues that the evidence was insufficient to prove that he "purposely engaged in conduct that constituted a substantial step intended to culminate in the commission of causing a serious physical injury to the officer." He suggests that his actions, at most, constituted "misdemeanor assault." He states that his sole intention in driving away was to flee, and the circumstances do not amount to circumstances manifesting extreme indifference to the value of human life. He contends that the evidence reflects that his intended purpose was to flee from Bass and not to cause serious physical injury. He specifically points to the fact that he was traveling at a slow rate of speed. Appellant argues that he was only attempting to "evade capture" when he "inadvertently hit" the front of the trooper's car and thus did not intend to cause serious physical injury. He suggests there was no evidence presented that he was trying to hit Bass and merely missed.

In support of his argument that the fact that he hit the trooper's vehicle at a slow rate of speed is not evidence of an attempt to commit first-degree battery, appellant cites *Mitchell v. State*, 290 Ark. 87, 717 S.W.2d 195 (1986). *Mitchell*, however, involved a shooting at close range. The supreme court affirmed the attempted-battery conviction, holding that the

6

defendant took a substantial step to carry out his purpose to kill or seriously injure the victim, but it was avoided by a misfire. *Id.* at 90, 717 S.W.2d at 196. Appellant states that the defendant's intent to hurt the victim in *Mitchell* was apparent because he shot at someone at close range.

Appellant cites multiple cases in which battery convictions were affirmed where there was substantial evidence that the defendant acted with the purpose to cause serious physical injury under circumstances manifesting extreme indifference to the value of human life. *See Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000) (repeated kicking to victim's head while victim was down); *Rongey v. State*, 2018 Ark. App. 617, 566 S.W.3d 161 (intentionally firing a weapon that struck a police officer); *Nolen v. State*, 278 Ark. 17, 643 S.W.2d 257 (1982) (driving at a high rate of speed while intoxicated). Appellant recognizes that these cases are not attempt cases but states that they show how his case greatly differs from them, and he acknowledges that that his actions were "no doubt reckless."

Here, Bass testified that appellant drove the Durango directly toward him as he stood behind the driver's-side door. This was after the initial stop in which appellant refused to comply with Bass's instructions, played "cat and mouse" with Bass, and fled the first time. After performing a PIT maneuver to stop appellant, Bass exited his patrol car and stood behind the door for protection. As the Durango headed toward him, Bass fired his weapon to prevent appellant from hitting him. The video of the incident was played for the jury, along with appellant's police interview in which he denied that he was trying to hit Bass but was only attempting to flee. The jury saw the conflict leading up to the incident from the

7

dashcam video as well as appellant subsequently driving the car in the trooper's direction after Bass's unsuccessful attempt to disable the Durango by performing a PIT maneuver.

The jury was also presented with Moomey's testimony of the incident as well as the dashcam video. It was within the province of the jury to weigh the evidence and assess credibility. *Gillard*, *supra*. In addition, this court has stated that an "automobile is a massive and powerful machine, and common sense tells us that such a machine is capable of inflicting death or serious physical injury to pedestrians even at relatively low speeds." *Williams v. State*, 96 Ark. App. 277, 280, 241 S.W.3d 290, 292 (2006); *Flores v. State*, 2023 Ark. App. 440, ___ S.W.3d ___. Viewing the evidence in the light most favorable to the verdict, we hold that substantial evidence supports the conviction.

III. *Evidentiary Rulings*

Our standard of review for evidentiary rulings is that a circuit court has broad discretion, and we will not reverse an evidentiary ruling absent an abuse of discretion. *Hopkins v. State*, 2017 Ark. App. 273, 522 S.W.3d 142. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* In addition, we will not reverse absent a showing of prejudice because prejudice is not presumed. *Id.*

Appellant first argues that the circuit court abused its discretion by allowing the State to introduce proof of his failure to appear as evidence of consciousness of guilt. He argues that his failure to appear was not relevant and should have been excluded under Rule 404(b)

8

of the Arkansas Rules of Evidence. Prior to trial the State asked to be allowed to introduce evidence of appellant's failure to appear, arguing that it showed consciousness of guilt. Appellant argued that he left court the day of the failure to appear after being informed by counsel that he had active warrants. He further argued that it was a completely separate incident, and the State was trying to use it as propensity evidence. The State countered that the evidence showed that appellant was a day out from a jury trial and knew he would be going to jail. The court allowed the State to call the circuit clerk to testify about appellant's failure to appear, indicating the issue was that appellant knew he had a trial and he did not show up for it. The court stated, "I'll allow it for that one limited [purpose] that he didn't show up, that he wasn't here."

Appellant renewed his objection during the circuit clerk's testimony, arguing that the testimony was not relevant and only went to show propensity or consciousness of guilt. He also argued it would confuse the jury because of the fleeing charge. The court again overruled the objection because appellant did not show up for the case at issue and limited the testimony on that basis.

Arkansas Rule of Evidence 404(b) (2023) prohibits introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith. However, the rule expressly permits introduction of such evidence if it is admissible for another purpose, including proof of intent, motive, or knowledge. The rule applies to evidence of prior and subsequent bad acts. *Hunt v. State*, 2015 Ark. App. 53, 454 S.W.3d 771. Moreover, the rule's list of permissible purposes for other-acts evidence is

not exhaustive. It has long been the law, for example, that application of the rule permits proof of acts by the accused that constitute admissions by his or her conduct designed to obstruct justice or avoid punishment for a crime. *Id.* Evidence of flight is admissible to show consciousness of guilt, even if the flight was not immediately after the alleged commission of the crime. *Henderson v. State*, 322 Ark. 402, 408, 910 S.W.2d 656, 659 (1995) (holding that proof regarding the defendant's travel with a prosecution witness to Louisiana on the day set for trial was relevant circumstantial evidence of his knowledge or consciousness of guilt and was not unfairly prejudicial).

The test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means that it has the tendency to make the existence of any fact or consequence to the determination of the action more or less probable than it would be without the evidence. *McCullough v. State*, 2009 Ark. 134, 298 S.W.3d 452 (evidence of attempted escape showed consciousness of guilt under circumstances, which included that the defendant was awaiting transport on a forty-year sentence at the time of the attempted escape and was facing new charges that had the potential of life without parole).

Appellant argues that the admission of this testimony prevented him from having a fair trial, arguing that it misled and confused the jury. He states that if he had tried to explain that he left because he was informed he had an active warrant instead of trying to "skip out" on trial, he would have been further prejudiced by disclosing to the jury that he was involved in another criminal matter; thus, the only remedy was to exclude.

We cannot say the circuit court abused its discretion in allowing the circuit clerk's testimony, which was limited to the fact that appellant did not show up for the case at issue. Even if there was an error in the admission of the testimony, it was harmless. The supreme court has said that even when a circuit court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. *Id.* Prejudice is not presumed, and we will not reverse a conviction absent a showing of prejudice to the defendant. *Id.* Here, Bass testified that appellant drove his car at him and that he would have been hit had he not acted by backing up and firing shots. The jury was able to see the dashcam video of the incident. Thus, to the extent there was error in the admission of appellant's failure to appear, it was slight, and there was overwhelming evidence of appellant's guilt.

Appellant next contends that the circuit court erred in admitting Moomey's testimony alleging that Bass was justified in using his firearm during the incident with appellant. At trial, appellant objected to the State's line of questioning on whether Bass was justified in what he did the day of the incident, stating that "Bass is not on trial. I don't see how that's relevant as to whether he had to fire his weapon or not." The court ruled that it was admissible, stating that it was part of the "whole story." Moomey testified that he believed that Bass's actions were justified.

Appellant argues that this evidence is not relevant and that it raised the inference that appellant must be guilty of battery because the trooper was justified in using his weapon. He states that whether Bass was justified in using his firearm was of no consequence to the determination of whether appellant was guilty of attempted battery or fleeing. He further argues that because the evidence was not relevant to the State's case, it could only be used to bolster Bass's anticipated testimony. Recognizing that it is only analogous, he cites *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999), in support of his argument that it is erroneous for the circuit court to permit an expert to testify that a crime victim is telling the truth. In *Hill*, Hill argued that the circuit court erred by allowing a witness to testify that the victims were telling the truth and allowing the witness to testify as to Hill's guilt. 337 Ark. at 224, 988 S.W.2d at 290. The State responded that the witness was testifying only about the DHS caseworker's criteria for evaluating the children's allegations of sexual abuse. *Id.* The State further argued that even if the circuit court erred in allowing the testimony, prejudice did not result because the overwhelming evidence from the children defeated any prejudice that may have been created. *Id.* This court agreed and affirmed on this point. *Id.*

In contrast, Moomey was not asked about whether appellant was telling the truth or was guilty. As part of Moomey's job, he was tasked with investigating officer-involved shootings to determine whether the officer was justified. He indicated such an investigation is conducted and given to the prosecutor, who then decides whether charges against the officer are warranted. Moomey was asked only if Bass was justified in his actions during the incident, and Moomey answered affirmatively. Bass testified that he fired his gun to prevent

12

appellant from hitting him. We cannot say that the circuit court abused its discretion in allowing the testimony.

Even if there was an error in the admission of Moomey's testimony, the error was slight, and there was overwhelming evidence of appellant's guilt. The jury heard Bass testify that appellant drove his car at him and that he would have been hit had he not deployed his firearm. The jury was able to see the dashcam video of the incident.

For his last argument, appellant contends that the circuit court erred in allowing Moomey to give his opinion of whether appellant was "guilty." The State asked Moomey whether, on the basis of his investigation, he thought that appellant was trying to hit Bass. Moomey responded that appellant "made a choice to push a gas pedal while the vehicle was pointed towards Bass. Yes." Appellant then objected that the testimony went to an ultimate issue in the case. The court ruled that the witness had already answered the question. The circuit court denied appellant's request to strike the testimony.

Appellant argues that this testimony mandated a legal conclusion and essentially told the jury what to do. Appellant recognizes the line of cases in which opinion testimony is allowed but states that his case is different. *See Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1988); *Davlin v. State*, 320 Ark. 624, 899 S.W.2d 451 (1995); *Salley v. State*, 303 Ark. 278, 796 S.W.2d 335 (1990). In *Salley*, the supreme court noted "the fine distinction between a permitted opinion which 'touches upon the ultimate issue' and an opinion, not admissible, which 'tells the jury what to do.'" *Salley*, 303 Ark. at 283, 796 S.W.2d at 338 (quoting *Gramling v. Jennings*, 274 Ark. 346, 349, 625 S.W.2d 463, 464 (1981)).

Arkansas Rule of Evidence 701 (2023) permits opinion testimony of a lay witness when the opinions are rationally based on the "perception" of the witness and are helpful to a clear understanding of his testimony or a determination of a fact in issue. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Ark. R. Evid. 704 (2023).

In *Salley, supra*, Salley appealed his convictions for burglary and attempt to commit capital felony murder and challenged the opinion testimony of two police officers about whether they thought he was trying to kill one of the officers when Salley fired at him from point-blank range. 303 Ark. At 282, 796 S.W.2d at 338. The supreme court affirmed, stating, "The testimony of the officers—one of them the intended victim—that a handgun was fired point blank at Officer Yant and that the appellant appeared to be shooting to kill is quite different from an expert utilizing established facts and from those facts making a conclusory statement that the actor was 'negligent' or 'guilty of malpractice.'" 303 Ark. at 283, 796 S.W.2d at 338. The court reasoned that the opinion testimony objected to by Salley dealt only with "the single element of intent and [did] not tell the jury to convict," and "to that extent [it only] touches upon the ultimate issue." *Id.* The jury was then left to determine the ultimate issue of whether intent plus premeditation and deliberation were proved to the jury's satisfaction beyond a reasonable doubt. *Id.*

Similarly, Moomey's testimony touched only on an ultimate issue. The jury was left to determine whether appellant intended to commit battery in the first degree, which means he attempted to cause serious physical injury under circumstances manifesting extreme

14

indifference to the value of human life. To prove attempted first-degree battery, the jury was instructed that the State had to prove that appellant intended to commit the offense of battery, that he purposely engaged in conduct that was a substantial step in the course of conduct to culminate in the commission of the battery, and that appellant's conduct was strongly corroborative of criminal purpose. Appellant argues that the testimony embraces not only intent but also whether appellant's actions constituted a substantial step. The State argues that the testimony did not tell the jury what to do.

We cannot say that the circuit court abused its discretion. It did not improperly instruct the jury to find appellant guilty of first-degree battery. *See, e.g.*, *Pitman v. State*, 2021 Ark. App. 80, 618 S.W.3d 205 (holding that it was not an abuse of discretion to allow the detective's testimony that a bruise on the victim photographed hours after the attack was caused by extreme pressure to her jawline because it did not mandate a legal conclusion, and the detective did not state that the defendant was guilty of rape or aggravated assault).

Appellant also argues that he was prejudiced because the Moomey's testimony prevented him from having a fair trial and that it could not be considered harmless error. The State contends that if there was error, it was harmless. We agree. As stated previously, the jury heard Bass's testimony that appellant drove the vehicle toward him and thought he would have been hit had he not backed up and fired the weapon. In addition, the jury saw the dashcam video of the incident. Thus, to the extent there was error in the admission of appellant's testimony, it was slight, and there was overwhelming evidence of appellant's guilt.

In conclusion, we hold there was sufficient evidence to support the attempted first-degree-battery conviction. We cannot say the circuit court abused its discretion in any of the challenged evidentiary rulings, but even if there was error, any error was harmless.

Affirmed.

HARRISON, C.J., and HIXSON, J., agree.

*Erin W. Lewis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.